UNITED STATES of America, Appellee,

v.

Felix German LUNA, Defendant,
Appellant.

UNITED STATES of America, Appellee,

v.

Wilberto LUNA, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Hipolito CRUZ, Defendant, Appellant.

Nos. 77–1288 to 77–1290.

United States Court of Appeals,
First Circuit.

Submitted March 6, 1978.

Decided May 12, 1978.

Certiorari Denied Oct. 2, 1978.

See 99 S.Ct. 160.

Edward M. Altman, Cambridge, Mass., for Felix German Luna, defendant, appellant.

Richard A. Gordon, Brookline, Mass., for Wilberto Luna, defendant, appellant.

Robert Y. Murray and Moulton & Looney, Boston, Mass., on brief, for Hipolito Cruz, defendant, appellant.

James E. O'Neil, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Hipolito Cruz, Felix Luna, and Wilberto Luna were charged in Count I of an indictment with conspiring to distribute heroin between March 8, 1976 and April 19, 1976. Count II of the indictment accused Cruz and Felix Luna of distributing heroin on March 8, 1976. Wilberto Luna was charged in Count III with distributing heroin on April 19, 1976. After a jury trial Cruz and Felix Luna were found guilty on Counts I and II. Wilberto Luna was acquitted of conspiracy, but found guilty of distribution. All three have appealed.

The primary evidence against the appellants was testimony by government agents and Thomas Lees, a paid informant. They testified that on March 8, 1976 Lees took a federal undercover agent, Albert Duffy, to the Polaroid Company parking lot in Cambridge, where a car with two male Puerto Rican passengers was waiting. Lees introduced Duffy to one of the men, identified at trial as Cruz. When Duffy asked to buy some heroin, Cruz said he would talk it over with "his man Garvey". Cruz returned to the car and engaged in conversation with the other man, identified as Felix Luna, who was conceded to be also known as Garvey. The latter opened the car trunk, took out a paper package, discarded the wrapper, and gave a silver packet to Cruz. He then drove off.

Negotiations between Duffy and Cruz ensued. Cruz said he could obtain any quantity of heroin Duffy wanted, but that he would have to take the matter up with Garvey. Asked how long it would take to get the drugs, Cruz replied that Garvey would need to make a trip to California. Cruz refused to introduce Duffy to Garvey and insisted that any deals be made through Cruz. Using $90.00 of government money, Duffy bought from Cruz three foil packets of what was later certified to be heroin. The transaction was observed by surveillance agents, who corroborated details as Duffy and Lees described them.

On April 19, 1976, Duffy again met the informant Lees and went with him to another Cambridge parking lot. When a brown automobile carrying four Puerto Rican males drove in and stopped, Lees introduced Duffy to one of the passengers, identified at trial as Wilberto Luna, the younger brother of Felix. Luna asked if Duffy wished to purchase some heroin and pulled a clear plastic bag containing a brown substance from under the seat of the car. After some discussion about the weight of the package, Luna added more of what was later analyzed to be heroin to the contents of the bag. Again using government money, Duffy paid Luna $1400. for it.

Duffy and Luna walked from the car to the streetside curb to converse in private. In response to Duffy's question about the origin of the drugs, Luna said the heroin had been chopped from three bricks his brother Garvey had brought from Mexico which he and Garvey stored in their apartment.

*Severance*

All three appellants moved the district court to sever trial of the conspiracy alleged in Count I of the indictment from trial of Counts II and III. They also sought severance of the substantive offenses from each other. The motions were denied. Only Wilberto Luna and Felix Luna have appealed on this issue. They contend that because the three counts of the indictment alleged crimes occurring on different dates and involving different individuals, they should not have been joined under Fed.R.Crim.P. 8.[1]

---

1. Fed.R.Crim.P. 8 reads:

   "Rule 8. Joinder of offenses and of defendants. (a) Joinder of offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

**4**

■ Assessment of whether distinct offenses or defendants may be included in the same indictment involves a balancing of the benefit to the government in trying related incidents and individuals together against the prejudice to a defendant of possibly having multiple offenses and participants confused with each other. *See King v. United States*, 355 F.2d 700, 703 (1st Cir. 1966). The question with regard to the propriety of charging multiple offenses in the same indictment is whether the incidents are of the same character, part of the same transaction, or part of a common scheme. Fed.R.Crim.P. 8(a). Similarly, various defendants may be jointly indicted if they have participated in the same transaction or series of events constituting an offense, Fed.R.Crim.P. 8(b).

■ A conspiracy count can be a sufficient connecting link between co-defendants and separate substantive offenses to permit their joinder in a single indictment, *see id.* at 704; *United States v. Donoway*, 447 F.2d 940, 943 (9th Cir. 1971); *Cupo v. United States*, 123 U.S.App.D.C. 324, 326, 359 F.2d 990, 992 (1966). While the inclusion of a conspiracy count will not rectify otherwise improper joinder, where the count has been added in good faith, and a factual basis for it exists, joinder is permissible. *United States v. Donoway, supra*, 447 F.2d at 943. A defendant alleging prosecutorial bad faith in joining multiple counts has the burden of establishing it, *see United States v. Blitz*, 533 F.2d 1329, 1344 (2d Cir. 1976).

■ In this case the first count of the indictment alleged a conspiracy lasting from March 8 to April 19, 1976 and involving all three appellants. The second and third counts charged commission of the same substantive offense by alleged co-conspirators at different times within the period charged in Count I. A rational basis for joinder thus appeared on the face of the indictment, *see United States v. Donoway, supra*, 447 F.2d at 943. Moreover, there is support for joinder in the evidence presented. According to Agent Duffy, Felix Luna, also known as Garvey, was present and gave Cruz the heroin Duffy purchased on March 8. Wilberto Luna's admission to Agent Duffy referred to Felix Luna, his older brother, as the source of the heroin sold on April 19. Finally, appellants have not pointed to any evidence that the prosecutor had an impermissible motive in joining the three counts of the indictment, *see United States v. Blitz, supra*, 533 F.2d at 1344. Although the jury subsequently acquitted Wilberto Luna on the conspiracy count, we do not think that proves the impropriety of having joined the offenses and accused individuals in the same indictment, *see Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960); *United States v. Donoway, supra*, 447 F.2d at 943.

■ Where there has been proper joinder, a defendant may nonetheless seek severance of offenses or co-defendants pursuant to Fed.R.Crim.P. 14.[2] To prevail he must make a "strong showing of prejudice" likely to result from a joint trial, *Sagansky v. United States*, 358 F.2d 195, 199 (1st Cir. 1963). Severance motions are addressed to the discretion of the trial judge, and their

"(b) Joinder of defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

Before the district court appellants attacked the inclusion of multiple offenses, *see* Fed.R. Crim.P. 8(a), as well as joinder of several defendants, *see* Fed.R.Crim.P. 8(b). It is unclear from the appellate briefs whether they continue to press both claims. Because of their close relation to each other, however, we address the applicability of both parts of the rule.

**2.** *Fed.R.Crim.P. 14 provides:*

"If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

denial will be reviewed only for abuse, *United States v. Smolar*, 557 F.2d 13, 21 (1st Cir. 1977).

There was no abuse of discretion here. Ordinarily, alleged co-conspirators and the substantive offenses they purportedly conspired to commit may be tried together, *see United States v. Edwards*, 488 F.2d 1154, 1160 (5th Cir. 1974). Neither the number of counts nor the number of defendants was so large as to give rise to concern that the jury could not differentiate among them. *See Gorin v. United States*, 313 F.2d 641, 646 (1st Cir. 1963). The government's case on each count and each defendant was clear, distinct, and of equal strength, preventing confusion or overlap, *see United States v. Martinez*, 479 F.2d 824, 828 (1st Cir. 1973). Appellants did not assert inconsistent defenses, which would possibly have required the jury to believe one accused at the expense of another, *see id.* All three denied participation in the crimes and gave alibis that in no way infringed on the testimony of the others.

Throughout the trial the district court took scrupulous care to ensure that the jury distinguished among the defendants and the charges, *see United States v. Smolar, supra*, 557 F.2d at 21. Several times it instructed the jury that Cruz' admissions to Duffy were to be considered only against Cruz and Felix Luna, and similarly that Wilberto Luna's statements were not evidence against Felix or Cruz, *see Gorin v. United States, supra*, 313 F.2d at 646. In its final charge the court directed the jury to focus on the evidence against each defendant separately, and charged that unless the jury first found that each defendant committed the substantive offense of which he was accused, they could not consider the conspiracy count, *see United States v. Clayton*, 450 F.2d 16, 19 (1st Cir. 1971). It is clear that the jury understood their task, for they found Wilberto Luna not guilty of the conspiracy. We find no impermissible prejudice to appellants in a joint trial.

### Chain of Custody

Hipolito Cruz and Felix Luna challenge the admission of the heroin Agent Duffy purchased from Cruz on March 8 on the ground that the government could not account for custody of it at all times between the sale and the offer of the evidence at trial. Testimony showed that after the purchase, Duffy went to the Lechmere Sales parking lot, where, in the presence of state police officer Gosby, he performed a field test on the substance and determined it was an opium derivative. Duffy then dated and initialed the packets and turned them over to Gosby. When he returned to state police headquarters, Gosby placed the evidence in a manila envelope, which he locked in a steel filing cabinet in the drug control offices.

Appellants' first argument focuses on the night the evidence remained in the filing cabinet. They point out that Duffy admitted at trial that he did not assign numbers to the packets before securing them in the cabinet and that no log was kept of items put in and taken out of it. Although three officers in addition to Duffy had keys to the filing cabinet, none were called to testify that they did not remove or tamper with the evidence while it remained there. This, appellants say, constitutes the first break in the chain of custody.

The next day, March 9, Gosby retrieved the evidence from the filing cabinet, assigned a number to it, and recorded the number on a drug control unit record sheet and narcotic control sheet, both of which were admitted at trial. He gave the packets to Evidence Control Officer McNeil, who placed them in the drug control locker. Except for periods when he was on vacation, only McNeil had access to the locker.

On June 14, Gosby took the evidence to the Massachusetts Food and Drug laboratory for analysis. On releasing it to receiving officer Paul Cantwell, Gosby obtained a signed receipt. Cantwell in turn took the evidence to chemist Mastrangelo, who signed for it in the record book. After analyzing the sample and ascertaining that it contained heroin, Mastrangelo returned it to Cantwell together with a certificate of analysis.

From June 14 until June 25, the evidence was stored in the Food and Drug laboratory safe. It is this period that gives rise to appellants' assertion that a second break in the chain of custody occurred. Apart from testimony concerning normal procedure with regard to the maintenance of evidence by Officer Cantwell and Officer Fanaras, who took over from Cantwell as evidence officer, nothing, argue appellants, established that the packets Officer Gosby delivered to the laboratory were the same ones he retrieved from Fanaras eleven days later.

■■ We see no error in the admission of the heroin at trial. Appellants' argument confuses the legal question of the admissibility of the evidence with the factual question of whether the jury would disregard it because of a belief that it was not the same substance Duffy purchased from Cruz. The preliminary issue is for the court to resolve. It must ascertain whether there is a reasonable probability that the evidence has not been altered in any material respect since the time of the crime, *see United States v. Brown*, 482 F.2d 1226, 1228 (8th Cir. 1973); *Chin Gum v. United States*, 149 F.2d 575, 577 (1st Cir. 1945). Absent an abuse of discretion, that decision will not be disturbed, *United States v. Brown, supra*, 482 F.2d at 1228.

Here the agents in charge of the evidence were called to testify, *see United States v. Picard*, 464 F.2d 215, 216 n. 1 (1st Cir. 1972); *United States v. MacDonald*, 455 F.2d 1259, 1264 (1st Cir. 1972). They accounted for the evidence, either by official records or by testimony concerning normal police procedure, for the entire period between the purchase and the offer at trial. Appellants offered no evidence that the drugs had been altered. The trial judge was thus entitled to rely on a presumption of official regularity, *see United States v. Brown, supra*, 482 F.2d at 1228; *United States v. Daughtry*, 502 F.2d 1019, 1021 (5th Cir. 1974). Any possibility that the heroin had been tampered with during the two periods in question was for the jury to assess, *see United States v. Barcella*, 432 F.2d 570, 572 (1st Cir. 1970).

*Cross-examination*

Wilberto Luna argues that the trial judge impermissibly limited cross-examination of the government's informant Lees regarding the circumstances of a favorable disposition of criminal charges he received in state court. The contention is that, by preventing him from exposing the full extent of federal agents' intervention in Lees' behalf, the trial judge deprived Luna of essential evidence impeaching Lees' credibility.

■■ Restrictions on the scope of cross-examination will be reviewed only for abuse of discretion, *United States v. Honneus*, 508 F.2d 566, 574 (1st Cir. 1974). Here information concerning Lees' close relationship with federal agents had already been conveyed to the jury. Lees testified that federal agents had agreed to assist him with respect to the state court charges and had relocated him in another part of the country in exchange for his cooperation. All the district court precluded was questioning about the Massachusetts procedure by which disposition of the charges was obtained. At best this evidence was cumulative. It was fully within the realm of the court's authority to cut off inquiry into it, *see* Fed.R.Evid. 611.

*Rebuttal testimony*

Felix Luna assigns as error the admission of rebuttal testimony by a government agent that prior to Felix Luna's arrest on these charges he and his brother Wilberto were stopped by agents at Logan Airport as they were about to board a plane to California and Felix was found with $20,700 in cash on his person. The effect of this testimony, it is argued, was to support the government's intended implication that Felix Luna was engaged in extensive drug trade.

■■ There was no error. The evidence was offered to impeach Felix Luna's testimony that he never carried large sums of money and had not travelled to California with Wilberto. Since credibility was at the core of the factual issues at trial, it was within the court's discretion to admit the testimony.

*Final instruction*

Wilberto Luna challenges the district court's refusal to give a requested jury charge. Wilberto's defense rested on an admission by his half-brother Severio Rodriguez that Rodriguez, not Wilberto, had made the April 19 sale to Agent Duffy. Rodriguez made a signed confession and gave oral testimony to this effect. Wilberto would have had the district court charge that because of Rodriguez' liability to criminal sanctions for having confessed to a crime, his testimony was entitled to greater weight than a statement by an ordinary witness.[3]

Appellant has presented no authority in which his requested charge has been approved. His analogy to Fed.R.Evid. 804(b)(3) is inapt. That rule relates to the admission of testimony, not its credibility. In view of the many motives Rodriguez may have had for confessing, truthfully or otherwise, we cannot fault the district court for refusing the requested charge.

*Affirmed.*

---

**3.** Before Rodriguez testified, the district court advised him of the consequences of confessing and appointed an attorney to represent him. In fact Rodriguez was arrested promptly after giving his statement in court.