UNITED STATES of America, Appellee,

v.

Charles REHAL, Defendant, Appellant.

No. 90–1932.

United States Court of Appeals,
First Circuit.

Heard April 5, 1991.

Decided July 23, 1991.

Daniel J. O'Connell, III, with whom Barbara A.H. Smith and Quinlan, Dee & Smith, were on brief, Boston, Mass., for defendant, appellant.

Paul V. Kelly, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief, Boston, Mass., for appellee.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

TORRUELLA, Circuit Judge.

Appellant Charles E. Rehal, Jr. served as a patrolman with the Salem, Massachusetts Police Department from January of 1980 until his promotion to sergeant in December of 1983. His badge, however, did not remain untarnished for long, as on May 15, 1990, he was convicted by a jury on three narcotics related offenses. On appeal, he makes two assignments of error, to wit, that the joinder of a conspiracy count (on which he was acquitted) with the substantive cocaine distribution charges was improper, and that the court's upward adjustments at sentencing based on his alleged abuse of public trust and willful attempts to obstruct justice were unwarranted. Finding that the claimed errors were not committed, we affirm.

I

We summarize the evidence only inasmuch as it is necessary for a full understanding of the issues presented on appeal. On December 12, 1989, a federal grand jury returned an indictment charging appellant with conspiracy to distribute, as well as to possess with intent to distribute, cocaine (in violation of 21 U.S.C. § 846), and with nine separate counts of distribution, and of aiding and abetting in the distribution, of cocaine (in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2). After some preliminary matters, a jury trial commenced on April 26, 1990.

At trial, the government sought to prove that Rehal conspired for a number of years with his long-time friend John Vallis (an attorney) to possess with intent to distribute cocaine. The evidence presented established that this conspiracy began on or about January of 1980 and continued— without significant interruption—until December of 1988. The object of the conspiracy was for Rehal and Vallis to acquire and possess a steady supply of cocaine for their own personal use and to distribute it to various associates and close personal

friends. Through the testimony of immunized witnesses, the government attempted to establish that Rehal sold or distributed cocaine to several acquaintances and fellow police officers on scores of occasions. Among these instances of distribution was a May 1985 transaction whereby Rehal sold an ounce of cocaine for $1,000 to fellow police officer Wilfred Garrette, a deal which took place at Rehal's own residence and during which Vallis was present. Moreover, about a month later Garrette additionally purchased one half of an "eight-ball" (one-half of 3.5 grams) from Rehal for $100. Finally, at the police department Christmas Party in 1988, a former Salem police officer by the name of Claudio Mateo sold three grams of cocaine to Rehal, who in turn sold at least a "quarter-gram" to Vallis during the course of the night.

After nine days of trial and lengthy deliberations, the jury convicted Rehal on the three substantive charges which were based on the transactions described above, rendering acquittal verdicts on the conspiracy charge and five other substantive counts. (Before submitting the case to the jury, the government had moved to dismiss the remaining count.) He was sentenced on September 10, 1990, to a 33–month term of imprisonment on the guidelines count and 36–month term of imprisonment on the two pre-guidelines counts, all sentences to be served concurrently and to be followed by a three year term of supervised release. We will address each of appellant's claims of error in turn.

## II

During the course of the trial, the defendant objected to the testimony of certain witnesses and moved for a determination as to whether the government was proceeding on a theory of one conspiracy or a series of conspiracies. At that point, the court required the government to designate its conspiracy, and the government submitted that it was pursuing a conspiracy between Rehal and Vallis, not Mateo. After the jury returned guilty verdicts with regard to three of the substantive counts

and an acquittal verdict with regard to the conspiracy charge, the defendant moved for a new trial. He argued that a plethora of evidence (otherwise inadmissible under Fed.R. of Evid. 403 & 404(b) and depicting the defendant as a major drug dealer, yet having little bearing on the crimes charged) was introduced at trial solely because of the existence of the very insubstantial conspiracy charge, thus rendering the entire proceedings fundamentally unfair. Appellant now restates this position before this court.

■ Fed.R.Crim.P. 8(a) permits the joinder of multiple offenses in a single indictment when the offenses charged "are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." *United States v. Stackpole*, 811 F.2d 689, 693 (1st Cir.1987). This court has repeatedly held that "a conspiracy count can be a sufficient connecting link between ... multiple offenses that tips the balance in favor of joinder." *United States v. Arruda*, 715 F.2d 671, 678 (1st Cir.1983); *United States v. Tashjian*, 660 F.2d 829, 833 (1st Cir.), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981); *United States v. Luna*, 585 F.2d 1, 4 (1st Cir.), *cert. denied*, 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978). *See also United States v. MacDonald & Watson Waste Oil Co.*, 933 F.2d 35, 60 (1st Cir. 1991). For a such a joinder to be proper, however, two requirements must be met: 1) the charges must have been joined in good faith and, 2) the joinder must have a firm basis in fact, considering the face of the indictment and the evidence adduced at trial. *Arruda*, 715 F.2d at 678; *Luna*, 585 F.2d at 4. Significantly, "[a] defendant alleging prosecutorial bad faith in joining multiple counts has the burden of establishing it." *Luna*, 585 F.2d at 4.

■ The record in this case supports the conclusion that the government's decision to join the substantive charges with the conspiracy charge was proper. With regard to the element of good faith, appellant contends that the joinder constituted prosecutorial bad faith because there was abso-

lutely no evidence of any type of agreement between him and Vallis to support the conspiracy charge. Even a cursory review of the evidence presented at trial on the counts of conviction, however, belies this claim. With regard to their first 1985 transaction, the record reflects that Rehal appeased Garrette regarding Vallis' presence in the apartment by informing him that Vallis was an old acquaintance who, being an attorney, had as much to lose as they did. Moments after the transaction was consummated, the evidence showed, all three individuals "did several lines [of cocaine] each." The 1988 transaction, moreover, saw Rehal telling Mateo that the cocaine he would purchase was not only for him but for another person, then selling a specified amount to Vallis later that evening. At the time the Rehal–Mateo transaction was carried out, Rehal made a partial payment to Mateo with the pledge that he would pay the balance after he had resold the cocaine, a promise which he fulfilled during the course of the night. Aside from appellant's bald assertion that the joinder constituted an abuse of prosecutorial discretion, nothing in the record suggests there was an improper motive for the joinder. Appellant having failed to meet its burden of establishing prosecutorial bad faith, the good-faith presumption prevails. *Id.*

Turning to the second consideration, we note that all nine substantive offenses were alleged to constitute acts "in furtherance of" the conspiracy, so the indictment, on its face, reflected a rational basis for the joinder. *Arruda,* 715 F.2d at 678; *Tashjian,* 660 F.2d at 833; *Luna,* 585 F.2d at 4. Moreover, the brief foregoing summary of the testimony confirms that the evidence adduced at trial justified submission of the charge to the jury. As appellant himself readily concedes, an agreement between members of a criminal conspiracy may be express or tacit, *United States v. Arboleda,* 929 F.2d 858, 870 (1st Cir.1991), and can be proven through circumstantial as well as direct evidence, *United States v. Geer,* 923 F.2d 892, 894 (1st Cir.1991), which in turn can include both the words and the actions of the de-

fendant, *United States v. Glenn,* 828 F.2d 855 (1st Cir.1987). The circumstantial evidence of the conspiracy presented at trial supports the conclusion that the joinder was grounded on a firm basis in fact. Contrary to appellant's contention, the fact that the jury acquitted appellant on the conspiracy count is of no consequence under the circumstances of this case. This court has held on numerous occasions that acquittal on the conspiracy charge does not necessarily undermine the conclusion that a sufficient basis in fact existed justifying the joinder of offenses, as it did in the case at bar. *Tashjian,* 660 F.2d at 834; *Luna,* 585 F.2d at 4; *United States v. Turkette,* 656 F.2d 5, 9 (1st Cir.1981). *See also Schaffer v. United States,* 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960).

While we recognize that there is always a potential for prejudice in the joint trial of conspiracy and substantive counts, it appears that Rehal suffered "no more prejudice than that which necessarily inheres whenever ... multiple charges are jointly tried." *Tashjian,* 660 F.2d at 834 (quoting *United States v. Adams,* 581 F.2d 193, 198 (9th Cir.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978)). "Assessment of whether distinct offenses ... may be included in the same indictment involves a balancing of the benefit to the government in trying related incidents ... together and the prejudice to the defendant of possibly having multiple offenses ... confused with each other." *Luna,* 585 F.2d at 4; *see also MacDonald & Watson Waste Oil Co.,* 933 F.2d at 59–60. Appellant has not pointed to, and we have been unable to find, specific instances in the record to support his claim that he was prejudiced in any way. Much to the contrary, the jury's discriminating verdict suggests that it properly compartmentalized the evidence as to the various counts and separately considered defendant's guilt as to each and every one. *United States v. Porter,* 764 F.2d 1, 13 (1st Cir.1985); *U.S. v. Boylan,* 898 F.2d 230, 240 (1st Cir.1990); *United States v. Drougas,* 748 F.2d 8, 19 (1st Cir. 1985); *United States v. Smolar,* 557 F.2d 13, 21 (1st Cir.1977). And, the limiting

instructions imparted by the trial judge further served as an adequate safeguard against evidentiary spillover. *United States v. Gómez–Pabón*, 911 F.2d 847, 860 (1st Cir.1990); *Porter*, 764 F.2d at 13.

## III

Prior to imposing sentence, the district court upwardly adjusted Rehal's base offense level of fourteen by four points. Two points were tacked on pursuant to § 3B1.3 of the sentencing guidelines based on appellant's abuse of public trust, United States Sentencing Commission, *Guideline Manual*, § 3B1.3 (Nov.1990) [hereinafter, U.S.S.G.], and two more for attempted obstruction of justice under U.S.S.G. § 3C1.1. On appeal, "we evaluate the district court's adjustment to the base offense level under the 'clearly erroneous' standard of review." *United States v. Iquaran–Palmar*, 926 F.2d 7, 9 (1st Cir.1991); *United States v. Aymelek*, 926 F.2d 64, 68 (1st Cir.1991).

## A

Under § 3B1.3, a sentencing court may increase a defendant's offense level by two points "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. In making its determination, the district court stated its belief that such an adjustment is appropriate in "every case where an individual such as a police officer charged with enforcement of the law engages in conduct so directly violative of the law and so dangerous to society as a whole." Transcript of Disposition Hearing, pp. 23–25 (hereinafter, "Tr."). The court also based its decision on the ground that in "at least one instance the defendant alerted Claudio Mateo that he was the target of the DEA investigation and advised him to take steps to protect himself, and that he used his intelligence and knowledge as a police officer, and intelligence and knowledge derived from that capacity, to conceal his own illegal activities from being discovered." *Id.* (Additionally, the court relied on its finding that Rehal had "suborned other officers into

violation of their duties by supplying [them] cocaine." *Id.*) We are of the opinion that these considerations, collectively considered, amply justified a § 3B1.3 adjustment to appellant's sentence.

As implemented in the instant case, § 3B1.3 imposes two conditions for the enhancement to be applicable. First, the defendant must have abused a position of public or private trust. Needless to say, a police officer occupies a position of public trust, and the commission of a crime by a police officer constitutes an abuse of that trust. *See United States v. Foreman*, 926 F.2d 792, 796 (9th Cir.1990) ("The public, including fellow law enforcement agents, expect that police officers will not violate the laws they are charged with enforcing.") Not everyone who abuses a position of public trust, however, is subject to the adjustment § 3B1.3 permits. Rather, the guideline allows for enhancement only if the defendant's abuse was rendered in "a manner that significantly facilitated the commission or concealment of the offense." *Foreman*, 926 F.2d at 798 (dissenting opinion). Although, as appellant correctly argues, the fact that he was a police officer in and of itself could not trigger the application of § 3B1.3, in the instant case the sentencing court additionally concluded that Rehal had "used his intelligence and knowledge as a police officer, and intelligence and knowledge derived from that capacity, to conceal his own illegal activities from being discovered." Appellant's claim that these findings are not supported by the evidence is baseless, as the record is replete with instances of how Rehal used his position as a police officer to, among other things, follow up on the operations of federal investigators inquiring into his activities. *See, e.g.*, Trial Transcript, Volumes VI, p. 30 (Garrette's testimony); Vol. IV, pp. 111, 169 (Mateo's testimony); Vol. IV., p. 205, Vol. V, p. 8 (testimony of Charles Bergman) (hereinafter, "Vol. ___, p. ___"). Thus, the sentencing court reasonably concluded that appellant used his familiarity with the investigative techniques used in narcotics investigations to conceal his own activities and avoid detec-

tion. We believe this is precisely the type of situation contemplated by § 3B1.3 and, consequently, the sentencing court's adjustment to appellant's sentence under § 3B1.3 must be upheld. *See also United States v. Ruiz,* 905 F.2d 499, 507 (1st Cir. 1990).

## B

Under § 3C1.1, on the other hand, a sentencing court may increase a defendant's base offense level by two points "[i]f the defendant willfully impeded or obstructed, or attempted to impede or obstruct, the administration of justice during the investigation or prosecution of the offense." U.S. S.G. § 3C1.1. The commentary to the version of the guidelines applicable at the time listed "threatening, intimidating, or otherwise unlawfully attempting to influence a ... witness" and "testifying untruthfully ... concerning a material fact" as types of conduct to which this enhancement applies. U.S.S.G. § 3C1.1, comment. (nn. 1(c) & (d)). (The amended version of the guidelines contains similar provisions, *see* U.S.S.G. § 3C1.1, comment. (nn. 3(a) & (b)). Following these directives, the district court found that the defendant had attempted to obstruct justice by testifying untruthfully at trial and by suggesting to potential witnesses that they change their stories as well as refuse to cooperate with law enforcement personnel. On appeal, Rehal mounts several attacks on the reasoning of the lower court, none of which requires extensive discourse.

First, appellant submits that if a sentence is to be enhanced because a defendant has committed perjury, it should logically follow that the standard of proof applicable to perjury cases (that is, proof beyond a reasonable doubt) should be employed. We should not have to restate at this point in time, however, that for sentencing purposes the preponderance standard has been found to satisfy the requirements of due process. *McMillan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 2418–19, 91 L.Ed.2d 67 (1986); *Aymelek,* 926 F.2d at 67; *United States v. Sklar,* 920

F.2d 107, 112 (1st Cir.1990). We therefore reject this argument without further ado.

Similarly unavailing is appellant's complaint that the trial judge's determination is based on a generalized finding of untruthfulness in a case where, given the acquittal verdicts, the jury might have found defendant's testimony to be credible. A district judge is not required to specify those portions of a defendant's testimony it believes to have been falsified, so long as the finding of untruthfulness is sufficiently supported by the record. *See United States v. Akitoye,* 923 F.2d 221, 229 (1st Cir.1991) (recognizing advantage of having district court specifically identify segments of defendant's testimony it found to be false, yet holding that this omission does not preclude affirmance of its finding where the record speaks eloquently for itself). Here, the record shows that during his two and a half days of testimony Rehal testified that he never "used," "sold" or "shared" cocaine (Vol. VIII, p. 154); that he "ha[d] never been involved with anything that [the prosecutor was] saying there in any way, shape or form" (cross-examination) (Vol. VII, p. 154); and that he denied the facts and circumstances of each of the events for which the jury found him guilty (Vols. VI, VII and VIII). While rational adjudicators might differ over the effect to be given to these inconsistencies in the testimony, we cannot say that the sentencing judge's treatment of the matter amounts to clear error. *See Aymelek,* 926 F.2d at 68; *Akitoye,* 923 F.2d at 229; *United States v. Batista–Polanco,* 927 F.2d 14, 22 (1st Cir.1991) (reviewing findings made for adjustment under obstruction of justice guideline only for clear error).

Finally, appellant seems to suggest that an enhancement for obstruction of justice based on his testimony at trial is in effect a punishment for the exercise of his right to deny his guilt and put the government to its proof, hence a violation of that portion of the version of § 3C1.1 applicable at the time which provided that the section was "not intended to punish a defendant for the exercise of a constitutional right." U.S.S.G. § 3C1.1, comment

(n. 3). (Since our decision in *Akitoye*, § 3C1.1 has been amended to clarify that "a denial of guilt under oath that constitutes perjury" could form a basis for application of that provision. U.S.S.G. § 3C1.1, comment (n. 1)). This argument, however, was previously considered and rejected by this Court in our *Akitoye* decision, where we held that § 3C1.1 merely codified the time-honored principle that in fixing a defendant's sentence the sentencing judge could take into account his or her false swearing at trial. *Akitoye*, 923 F.2d at 228. "Thus, 'committing ... perjury' or 'testifying untruthfully ...' [could constitutionally] trigger an upward adjustment under the guidelines." *Id. See also Batista–Polanco*, 927 F.2d at 22 (holding that enhancement of sentence for attempting to obstruct justice by testifying falsely in own defense implicates no constitutional right). The constitution, after all, does not provide criminal defendants with the right to commit perjury. *Nix v. Whiteside*, 475 U.S. 157, 173, 106 S.Ct. 988, 997, 89 L.Ed.2d 123 (1986); *United States v. Batista–Polanco*, 927 F.2d 14, 22 (1st Cir.1991).

Given our finding that the sentence enhancement under § 3C1.1 is supportable on the basis of appellant's untruthful trial testimony, we deem it unnecessary to review the sentencing court's alternative reliance on appellant's attempts to influence potential government witnesses.

## IV

In view of the foregoing, Rehal's convictions, as well as his ensuing sentences, are hereby,

*Affirmed.*