USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1176

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 SHIRLEY P. RECCKO,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Mary M. Lisi, U.S. District Judge]

 Before

 Selya, Boudin and Lipez, Circuit Judges.
 
 

 Thomas G. Briody, by appointment of the court, for appellant.
 Richard W. Rose, Assistant United States Attorney, with whom
Margaret E. Curran, United States Attorney, was on brief, for
appellee.

August 10, 1998

 SELYA, Circuit Judge. This single-issue sentencing
appeal requires us to decide whether the district court properly
applied the two-level enhancement for abuse of a position of trust,
USSG 3B1.3 (1997), in calculating the defendant's guideline
sentencing range (GSR). Concluding, as we do, that the court
erred, we vacate the defendant's sentence and remand for
resentencing.
I. BACKGROUND
 The relevant facts are not seriously disputed. The
defendant, Shirley P. Reccko, was a civilian employee of the city
of Warwick, Rhode Island. She toiled as a receptionist/switchboard
operator at police headquarters, handling incoming telephone calls
and notifying persons in authority when visitors arrived at the
stationhouse.
 On December 14, 1995, several groups of Drug Enforcement
Administration (DEA) agents came to the station to see a narcotics
detective. The defendant observed the influx and told her drug-
dealer friend, Patrick Vigneau, what she had seen. After receiving
the tip, Vigneau directed his supplier to cancel a sizable
marijuana delivery that had been scheduled to take place that
evening at a Warwick motel. As matters turned out, one of the
participants in the planned transaction was a government informant,
and the DEA agents had gathered at the police station preparatory
to interceding in that very delivery. Its abrupt cancellation
thwarted their stratagem.
 In the long run, however, the DEA prevailed. Agents soon
arrested Vigneau's supplier, who cooperated with the government and
inculpated Vigneau. The supplier-turned-cooperating-witness also
confirmed the link between the defendant's tip and the cancellation
of the delivery a piece of information that the authorities
easily corroborated, as the defendant had spoken with Vigneau on a
monitored line.
 Reccko ultimately pled guilty to a charge that she
unlawfully gave notice of an impending search and seizure. See 18
U.S.C.A. 2232(b) (West Supp. 1994). At the disposition hearing,
the parties quarreled over the GSR. As relevant here, the
defendant asseverated that her offense level should not be elevated
pursuant to USSG 3B1.3 because she did not hold a position of
trust. The district court nonetheless applied the enhancement,
thereby boosting the offense level and yielding a GSR of 15-21
months. The district court then imposed an incarcerative sentence
at the bottom of the range. This appeal ensued.
II. DISCUSSION
 The defendant, ably represented by appointed counsel,
contends that the district court misinterpreted section 3B1.3 by
expanding the "position of trust" rubric to include a
receptionist/switchboard operator whose duties included no
significant discretionary functions. We review the district
court's interpretation of the sentencing guidelines, and, thus, its
handling of this interpretive question, de novo. See United Statesv. Tardiff, 969 F.2d 1283, 1289 (1st Cir. 1992) ("The court of
appeals must determine for itself the legal meaning of terms such
as 'position of public or private trust.'").
 The disputed guideline provides in pertinent part:
 If the defendant abused a position of public
 or private trust . . . in a manner that
 significantly facilitated the commission or
 concealment of the offense, increase [the
 defendant's offense level] by 2 levels.

USSG 3B1.3. The commentary indicates that the enhancement
"applies to persons who abuse their positions of trust . . . to
facilitate significantly the commission or concealment of a crime." 
Id., comment (backg'd).
 On a superficial reading of this language, a
receptionist/switchboard operator position at police headquarters
might well seem to be a position of trust. After all, police
headquarters is the nerve center of local law enforcement, and one
ought to be able to "trust" any person employed there. The
sentencing guidelines, however, create their own vocabulary and
the guidelines sometimes define terms in ways that might strike lay
persons as peculiar. So it is here: in the idiom of the
sentencing guidelines, the term "position of public or private
trust" has a special meaning. The application notes, as amended in
1993, explain that positions of trust are characterized by
significant discretion and minimal supervision:
 "Public or private trust" refers to a position
 of public or private trust characterized by
 professional or managerial discretion (i.e.,
 substantial discretionary judgment that is
 ordinarily given considerable deference). 
 Persons holding such positions ordinarily are
 subject to significantly less supervision than
 employees whose responsibilities are primarily
 non-discretionary in nature. For this
 enhancement to apply, the position of trust
 must have contributed in some significant way
 to facilitating the commission or concealment
 of the offense (e.g., by making the detection
 of the offense or the defendant's
 responsibility for the offense more
 difficult). This adjustment, for example,
 would apply in the case of an embezzlement of
 a client's funds by an attorney serving as a
 guardian, a bank executive's fraudulent loan
 scheme, or the criminal sexual abuse of a
 patient by a physician under the guise of an
 examination. This adjustment would not apply
 in the case of an embezzlement or theft by an
 ordinary bank teller or hotel clerk because
 such positions are not characterized by the
 above-described factors.

Id., comment. (n.1).
 Consistent with this application note's stated method, we
have directed sentencing courts to conduct a two-step inquiry into
the possible applicability of an enhancement under section 3B1.3. 
First, the court must determine whether the defendant occupied a
position of trust at all. If not, the inquiry ends and no
enhancement accrues. If, however, this initial query produces an
affirmative response, the court must proceed to ascertain the
extent to which the defendant used that position to facilitate or
conceal the offense. See United States v. Gill, 99 F.3d 484, 489
(1st Cir. 1996); United States v. Santiago-Gonzalez, 66 F.3d 3, 8
(1st Cir. 1995).
 Here, the lower court noted that the defendant's
particular situation was not covered explicitly either by the
guideline commentary or by existing precedent, and so proceeded to
"discern from the guidelines themselves what the intent of the
Sentencing Commission was." In the course of this exercise, the
court concluded that, because the defendant was exposed to
sensitive information in her public employment and used that
information illicitly, she abused a position of public trust. The
court reasoned:
 This Defendant, although she did not
 hold a position as a police officer or as a
 police dispatcher, held a position of trust. 
 She was in a unique position to take incoming
 phone calls and to route individuals [from]
 outside of the Warwick Police Department to
 the appropriate location within the building
 for purposes of their massing for what was to
 be a drug raid. She had the ability to take
 those calls. She knew who was calling. She
 had to ask people who they were in order to
 send them to the right place within the
 building. And so she was uniquely situated to
 receive extremely sensitive information, which
 she then took upon herself and initiated the
 contact with [the drug-dealer] to give him the
 very sensitive information which he needed . .
 . .

 * * *

 So I find that on this unique set of
 facts, with an individual who is employed by a
 public agency, a public agency that happens to
 be the police department whose
 responsibilities are public safety, and where
 she was in the significant and unique position
 to tak[e] in sensitive information, that she
 abused the trust that was placed in her by
 taking that very information and taking the
 initiative to call [the drug-dealer] to head
 off the raid.

 We do not believe that the district court's analysis
squares with the special meaning of "position of public or private
trust" that the guidelines prescribe. In essence, the court
eschewed the two-step approach specified by our cases and instead
conflated the requisite inquiries. Rather than asking, first,
whether the defendant held a position of trust, and if so, whether
she used that position to facilitate a crime, the court essentially
determined that the defendant held a position of trust precisely
because her job enabled her to commit the crime. We conclude that
this was error.
 The foremost flaw in the court's reasoning is that it
ignores the attributes of a position of trust limned in the
controlling application note. This omission is telling, as
guideline commentary is binding unless it violates federal law, is
inconsistent with the guidelines themselves, or is based upon a
plainly erroneous reading of a guideline provision. See Stinson v.
United States, 508 U.S. 36, 42-43 (1993); United States v. Fiore,
983 F.2d 1, 2 (1st Cir. 1992). The commentary here suffers from
none of these vices. Thus, the sentencing court should have
adhered to the application note. The court did not do so. 
Instead, the court deviated from it by failing to account for
whether the receptionist/switchboard operator position embodied the
kind of "professional or managerial discretion" that the Sentencing
Commission has made the signature characteristic of a position of
trust. See USSG 3B1.3, comment. (n.1); see also United States v.
Becraft, 117 F.3d 1450, 1452-53 (D.C. Cir. 1997); United States v.
McMillen, 917 F.2d 773, 775 (3d Cir. 1990).
 When a sentencing court erroneously applies a guideline,
we often remand for the court to make a new finding. See, e.g.,
United States v. Jackson, 30 F.3d 199, 204 (1st Cir. 1994); United
States v. Mariano, 983 F.2d 1150, 1157 (1st Cir. 1993). Here,
however, the undisputed facts indicate quite plainly that the
defendant's position was not invested with any substantial degree
of discretion.
 Reccko answered the telephone and relayed calls. She
also announced visitors, but she did not have discretion either to
screen them or to admit them to the non-public areas of the
stationhouse. She was closely supervised, and the telephone lines
that she regularly used were monitored. All in all, Reccko's
position afforded her access to information, but reposed in her no
discernible discretion. Indeed, at oral argument in this court the
prosecutor admitted that the receptionist/switchboard operator
position involved no significant discretionary authority. Under
these circumstances, we deem the receptionist/switchboard operator
job to be on a par with the bank teller and hotel clerk positions
that the Sentencing Commission identified as non-trust positions. 
See USSG 3B1.3, comment. (n.1). By like token, the job is a fair
congener of other non-professional, non-managerial posts in public
and private employment that courts routinely have found not to be
positions of trust. See, e.g., United States v. Ragland, 72 F.3d
500, 503 (6th Cir. 1996) (customer service representative at bank);
United States v. West, 56 F.3d 216, 220 (D.C. Cir. 1995) (courier);
United States v. Smaw, 22 F.3d 330, 332 (D.C. Cir. 1994) (time-and-
attendance clerk for federal agency).
 The government's counter-arguments lack force. It
asserts, first, that despite the Commission's apparent insistence
that positions of trust are characterized by significant discretion
and minimal supervision attributes that the government concedes
are absent here our decisions have expanded the contours of the
Commission's definition. To substantiate this claim, the
government cited at oral argument our opinion in United States v.
Innamorati, 996 F.2d 456 (1st Cir. 1993). Innamorati cannot bear
the weight that the government loads upon it.
 To the extent relevant, the Innamorati case involved a
defendant, one Thompson, who had been a police officer at the
Registry of Motor Vehicles and had employed that position to obtain
access to information later used to facilitate a drug-trafficking
conspiracy. See id. at 490. Police officers regularly exercise
significant discretion, and, thus, Thompson occupied a position of
trust. See id. (citing United States v. Rehal, 940 F.2d 1, 5 (1st
Cir. 1991)). It made no difference that Thompson was assigned to
desk duty. See id. From this brief account, it is readily
apparent that the Innamorati decision does not in any way, shape,
or form support the claim that a closely supervised position which
lacks meaningful discretion nevertheless can be regarded as "a
position of public or private trust" under section 3B1.3 merely
because occupying the position makes it easier for the holder to
gain access to facilitative information.
 It is true that in dealing with the position-of-trust
enhancement courts occasionally have emphasized the employee's
freedom to commit wrongs that defy facile detection. See, e.g.,
Tardiff, 969 F.2d at 1289; United States v. Hill, 915 F.2d 502, 506
(9th Cir. 1990). But these decisions deal with earlier versions of
section 3B1.3 and, thus, antedate the Sentencing Commission's
emphasis on managerial or professional discretion (which was
inserted into the application note by an amendment that took effect
on November 1, 1993). In all events, the paradigm has no bearing
here. The defendant's position did not furnish her with any such
freedom, as most of the telephone lines at the station including
the line that she used when speaking to Vigneau were continuously
monitored. This circumstance virtually ensured that her tip would
be easily detected (as, indeed, it was).
 The United States also suggests that the general public
safety function of the police department transforms the
receptionist/switchboard operator position to one of public trust. 
We think not. Although this court, as in Innamorati, 996 F.2d at
490 and Rehal, 940 F.2d at 5, has not hesitated to affirm section
3B1.3 enhancements as applied to police officers who commit certain
offenses, we see no principled basis for extending the enhancement
to civilian employees of a municipality, assigned to work at police
headquarters or comparable venues, whose jobs do not possess the
requisite accouterments of positions of trust. Accord United
States v. Long, 122 F.3d 1360, 1365-66 (11th Cir. 1997) (holding
that prison food service foreman was not in a position of trust for
purposes of section 3B1.3).
 We have one more bridge to cross. The commentary to USSG
3B1.3 contains an express exception for postal workers, rendering
the position-of-trust enhancement applicable to any postal employee
committing certain enumerated offenses, regardless of the incidence
vel non of discretion. The Sentencing Commission has explained
that "because of the special nature of the United States mail, an
adjustment for an abuse of a position of trust will apply to any
employee of the U.S. Postal Service who engages in the theft or
destruction of undelivered United States mail." USSG 3B1.3,
comment. (n.1). The district court apparently believed that this
exception strengthened the case for applying section 3B1.3 to
Reccko, and the government indicates its agreement with this
proposition. We demur. There is simply no basis, either in
language or in policy, for expanding the postal workers' exception
beyond its terms. The maxim "expressio unius est exclusio
alterius" is a useful interpretive tool in construing the
sentencing guidelines. See Smaw, 22 F.3d at 332-33; United Statesv. Newman, 982 F.2d 665, 673-74 (1st Cir. 1992). If the Sentencing
Commission had intended additional types of public employees to be
subject to the position-of-trust enhancement without regard to
their level of professional or managerial discretion, it doubtless
would have said so.
III. CONCLUSION
 We need go no further. We recognize that there may well
be sound arguments for enhancing the sentence of a public employee
who, though supervised and lacking in discretion, is peculiarly
situated to imperil law enforcement activities and even to
jeopardize the safety of police officers through unlawful conduct. 
Withal, the guidelines say what they say and rewriting them is a
matter for the Sentencing Commission, not for the courts. 
Consistent with the guidelines as written and explained by the
Sentencing Commission, we conclude that the defendant did not hold
a position of trust within the meaning of USSG 3B1.3. Because the
district court erroneously ruled to the contrary, we vacate the
defendant's sentence and remand for resentencing.

 Vacated and remanded.