### UNITED STATES of America

v.

### Gaye B. PLUMADORE, Defendant

### No. CR. 02–68–P–H.

United States District Court,
D. Maine.

Sept. 26, 2002.

Jonathan A. Toof, Office of the U.S. Attorney, Portland, ME, for U.S.

Robert M. Napolitano, Judith M. Wohl, Esq., Attorney at Law, Portland, ME, John S. Webb, Esq., Nichols & Webb, P.A., Saco, ME, Peter E. Rodway, Esq., Rodway & Horodyski, Portland, ME, for Defendant.

### MEMORANDUM DECISION ON MOTION TO SEVER

DAVID M. COHEN, United States Magistrate Judge.

Gaye Plumadore, charged with one count of conspiring to possess marijuana with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846 (Count I) and two counts of making false declarations to a grand jury in violation of

18 U.S.C. § 1623 (Counts II and III), moves to sever Count I from Counts II and III and to sever her trial from that of co-defendant David Todd Massey.[1] *See generally* Indictment (Docket No. 4); Motion for Relief from Misjoinder and Prejudicial Joinder ("Motion") (Docket No. 14). For the reasons that follow, the Motion is denied.

## I. Discussion

### A. Motion To Sever Counts

█ Plumadore seeks severance of Count I from Counts II and III on two bases: that the counts are misjoined pursuant to Fed.R.Crim.P. 8 and, alternatively, that their joinder is so prejudicial as to warrant severance pursuant to Fed. R.Crim.P. 14. Motion at [1]-[2]. Neither argument has merit.

Fed.R.Crim.P. 8(a) provides, in relevant part, that "[t]wo or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged . . . are . . . based on . . . two or more acts or transactions connected together or constituting parts of a common scheme or plan." The First Circuit "has repeatedly held that a conspiracy count can be a sufficient connecting link between . . . multiple offenses that tips the balance in favor of joinder." *United States v. Rehal*, 940 F.2d 1, 3 (1st Cir.1991) (citations and internal quotation marks omitted). "For such a joinder to be proper, however, two requirements must be met: 1) the charges must have been joined in good faith and, 2) the joinder must have a firm basis in fact, considering the face of the indictment and the evidence adduced at trial." *Id.* "Significantly, a defendant alleging prosecutorial bad faith in joining multiple counts has the burden of

establishing it." *Id.* (citation and internal punctuation omitted).

As to the first requirement, Plumadore makes no argument of prosecutorial bad faith. *See generally* Motion. As to the second, the indictment on its face establishes the requisite linkage between the conspiracy and perjury charges. The indictment charges that commencing on or about January 1, 1996 and continuing until on or about October 31, 2001 Plumadore and others participated in a conspiracy to possess, with intent to distribute, marijuana (Count I). Indictment at 1. Further, the indictment charges that while testifying before a grand jury investigating the allegations described in Count I, Plumadore lied under oath concerning an attempted transfer to her by Scott Barbour of $30,900 in U.S. currency on March 29, 1998 (Counts II and III). *Id.* at 1–2.

Beyond this, the government provides grand-jury testimony of a Maine Drug Enforcement Agency agent, Gerard Baril, further illuminating the perjury-conspiracy connection. According to Baril, the conspiracy in question (which involved shipment of marijuana from Texas to Maine and wiring of money from Maine to Texas) was initiated in late 1995 or early 1996 by Massey, Barbour and a third person, Barry May. Transcript of Testimony of Gerard Baril, United States Grand Jury Proceedings, attached as Exh. 1 to Objection to Motion for Relief from Misjoinder/Prejudicial Joinder, etc. ("Objection") (Docket No. 18), at 2–5. Per Baril's testimony, Plumadore became Massey's girlfriend and began living with him in Sugar Land, Texas, in the fall of 1997. *Id.* at 13–14. According to Baril, when Massey was imprisoned on an unrelated charge in early 1998 Plumadore took his place in the marijuana

---

1. Plumadore moved to sever her trial from that of two co-defendants, Massey and John P. Ross, *see* Motion at [2]; however, the Motion is now moot as to Ross, who subsequently plead guilty, *see* Agreement To Plead Guilty and Cooperate (Docket No. 17).

operation. *Id.* at 15, 21–22. Baril testified that on March 28, 1998 Barbour packaged $30,900 inside a box, labeled it as "computer parts" and attempted to send it by a courier in Maine to Plumadore in Texas; however, the courier became suspicious and opened the box, finding money and a note giving payout directions rather than computer parts. *Id.* at 24–26. According to Baril, Plumadore testified under oath before a grand jury in October 1998 that the $30,900 was sent in repayment of a promissory note in her favor purportedly signed by Barbour. *Id.* at 31–33. Baril testified that Plumadore produced the promissory note as an exhibit but that, among other things, the note specified that it was to be paid in full on a date prior to the date it allegedly was executed. *Id.* at 32–33.

Thus, to the extent the indictment on its face leaves any doubt about the connection between Counts I, II and III, Baril's testimony clearly illuminates the requisite linkage. Plumadore's Rule 8 argument accordingly is without merit.

Plumadore's alternative "prejudice" argument is similarly unavailing. Plumadore invokes Fed.R.Crim.P. 14, which provides in relevant part: "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

To demonstrate the type of prejudice warranting severance of counts, "[i]t is essential . . . that a defendant present to the court enough information to demonstrate that the joinder of charges will cause prejudice so that the court may weigh intelligently the considerations of judicial economy against defendant's freedom to choose whether to testify regarding a particular charge against him." *United States v. Scivola,* 766 F.2d 37, 43 (1st Cir.1985). Plumadore merely states, in conclusory fashion, that when she testifies in her own defense regarding the drug-conspiracy count "her testimony will be tainted by the accusation that she lied to the grand jury" and, thus, her "ability to defend herself with her own words will be impaired by the allegations contained in Counts II and III." Motion at [2]. The court is left to speculate as to the exact manner and extent to which the "taint" would affect her testimony on Count I.

Moreover, the government argues persuasively in its opposition, and Plumadore does not contest in her reply, that (i) any prejudice flowing from joinder of the perjury counts would be minimized by instructions to the jury that a defendant is presumed innocent of charges in an indictment until each is proved beyond a reasonable doubt, and (ii) even were the counts severed, the government would remain free at Plumadore's trial on Count I to cross-examine her as to all acts allegedly committed in furtherance of the drug conspiracy, including those described in Counts II and III. Objection at 4–5; *see generally* Reply to Government Opposition to Relief from Prejudicial Joinder ("Reply") (Docket No. 19). The inefficiency of holding two trials on the charges pending against Plumadore is self-evident; the benefit to Plumadore is not.

For these reasons, Plumadore falls well short of carrying the heavy burden of demonstrating prejudice of such a degree and kind as to warrant severance pursuant to Fed.R.Crim.P. 14. *See United States v. Natanel,* 938 F.2d 302, 308 (1st Cir.1991) ("Under the best of circumstances, this [severance pursuant to Rule 14] is a difficult battle for a defendant to win.") (citation and internal punctuation omitted).

## B. Motion To Sever Defendants

■ Plumadore finally argues that her trial should be severed from that of co-defendant Massey pursuant to Fed. R.Civ.P. 14 so that she can call Massey as a witness. Motion at [2]-[3]. The burden of showing prejudice in this context, as well, is heavy:

> As a rule, persons who are indicted together should be tried together. This practice helps both to prevent inconsistent verdicts and to conserve resources (judicial and prosecutorial). Thus, when multiple defendants are named in a single indictment, a defendant who seeks a separate trial can ordinarily succeed in obtaining one only by making a strong showing of evident prejudice. The hurdle is intentionally high; recent Supreme Court precedent instructs that a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*United States v. Flores–Rivera,* 56 F.3d 319, 325 (1st Cir.1995) (citations and internal quotation marks omitted). To obtain severance on the basis of a co-defendant's testimony, a defendant must demonstrate: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the codefendant will in fact testify if the cases are severed. *United States v. Drougas,* 748 F.2d 8, 19 (1st Cir.1984). We shall refer to these as the "first-tier" *Drougas* factors. Upon such a showing, the district court should (1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) consider whether the testimony would be subject to substantial, damaging impeachment; (3) assess the counter arguments of judicial economy;

and (4) give weight to the timeliness of the motion. *Id.* These are "second-tier" *Drougas* factors.

*United States v. Smith,* 46 F.3d 1223, 1231 (1st Cir.1995).

In support of the Motion, Plumadore submits an affidavit of Massey in which he states, *inter alia,* that (i) he lived with Plumadore from the fall of 1997 through January 1998 and then again from September 2000 through June 2002, (ii) he was in federal prison from January 1998 through September 2000 but during that time was in constant contact with Plumadore, and (iii) if called to testify, he would testify that Plumadore was not involved in any drug conspiracy during the time he has known her (based on both his personal observation of and communications with Plumadore during that time). Affidavit of Todd Massey (Docket No. 15) ¶¶ 3–8.

The government argues that Plumadore does not make a sufficient showing to get beyond the first tier of *Drougas.* Objection at 5–6. I agree. The government points out (correctly) that Massey's proffered testimony concerning Plumadore's activities during the period of time Massey was jailed is inadmissible hearsay. *See id.* Plumadore rejoins that such testimony might be admissible pursuant to Fed. R.Evid. 803(3). Reply at [1] n. 1. However, that rule, which removes from the hearsay prohibition statements "of the declarant's then existing state of mind, emotion, sensation, or physical condition," is inapposite. Plumadore's state of mind is irrelevant to whether she did or did not participate in the alleged drug conspiracy, and Rule 803(3) does not extend so far as to permit Massey to testify for the purpose of proving the truth of her asserted non-participation. *See* Fed.R.Civ.P. 803(3) (expressly excluding "a statement of memory or belief to prove the fact remembered or

believed" unless related to a declarant's will).

Stripped of its inadmissible portions, Massey's testimony is not substantially inconsistent with the government's theory of Plumadore's participation in the conspiracy—which is that she took over for Massey while he was incarcerated. *See* Objection at 5–6. This fact, in turn, largely saps the strength of Plumadore's showing that she has a *bona fide* need for the Massey testimony based on its exculpatory value.

In her reply brief, Plumadore attempts to parry this blow with a new argument: that, even assuming *arguendo* the inadmissibility of a portion of the Massey testimony, the admissible portion nonetheless is necessary to her defense inasmuch as it bears not only on the question of guilt but also on the question of the drug quantity for which she may be held accountable at sentencing if found guilty. Reply at [1]. She points out that the government has alleged she participated in a conspiracy that involved 100 or more kilograms of marijuana and that if the government pleads and proves that drug quantity, she will be subject to a minimum mandatory sentence of ten years. *Id.* The problem for Plumadore is that the question for the jury is not whether she personally was responsible for 100 or more kilograms of marijuana, but rather whether "the conspiracy involved a type and quantity of drugs sufficient to justify a sentence above the default statutory maximum and ... [whether she was] guilty of participation in the conspiracy[.]" *Derman v. United States*, 298 F.3d 34, 43 (1st Cir.2002). If

these questions are answered in the affirmative, "the judge lawfully may determine the drug quantity attributable to that defendant and sentence him accordingly (so long as the sentence falls within the statutory maximum made applicable by the jury's conspiracy-wide drug quantity determination)." *Id.* In this scenario, Massey's testimony bearing on the drug quantity for which Plumadore should be held accountable would be given at sentencing, not at trial. Thus, even in the absence of severance, he would not be obliged to testify at trial to give testimony favorable to Plumadore on the drug-quantity issue.

Beyond this, even assuming *arguendo* that drug quantity were an issue for the jury at trial rather than the trial judge at sentencing, Plumadore still would fall short of making the requisite showing of *bona fide* necessity for Massey's purportedly exculpatory evidence. It is unclear either from Massey's affidavit or Plumadore's generalized arguments, *see* Reply at [1], that the admissible portion of Massey's evidence, if credited, would affect drug quantity in such a way as to have a meaningful impact on Plumadore's ultimate sentence.[2]

Plumadore accordingly fails to meet her burden of demonstrating that her trial should be severed from that of co-defendant Massey pursuant to Fed.R.Crim.P. 14.

## II. Conclusion

For the foregoing reasons, the defendant's motion to sever Count I from Counts II and III and to sever her trial

---

2. The government also argues that the Massey affidavit is defective for first-tier *Drougas* purposes inasmuch as Massey fails to make clear whether he is willing to testify in Plumadore's behalf only if his case is severed from hers or whether, in the event of severance, he would be willing to testify regardless whose trial was scheduled first. Objection at 6. Here, Plumadore has the better of the argument. *See* Reply at [2]. The cases cited by the government in support of this proposition do not mandate that such a showing be affirmatively made by a defendant. *See United States v. Burns*, 898 F.2d 819 (1st Cir.1990); *Smith*, 46 F.3d at 1231 n. 3. In addition, *Drougas* itself merely requires that a defendant show "that the codefendant will in fact testify if the cases are severed." *Drougas*, 748 F.2d at 19.

from that of co-defendant Massey is **DE-NIED.**