UNITED STATES of America, Appellee,

v.

Novia TURKETTE, Jr., Appellant.

UNITED STATES of America, Appellee,

v.

John VARGAS, Appellant.

Nos. 79–1545, 79–1546.

United States Court of Appeals,
First Circuit.

Argued June 6, 1981.

Decided Aug. 13, 1981.

---

Alfred Paul Farese, Everett, Mass., for appellant, Novia Turkette, Jr.

John Wall and Harry C. Mezer, Boston, Mass., with whom Cullen & Wall, Boston, Mass., was on brief, for appellant, John Vargas.

William C. Bryson, Dept. of Justice, Washington, D.C., with whom Edward F. Harrington, U.S. Atty., Martin D. Boudreau, Sp. Atty., Boston, Mass., and Joel M. Gershowitz, Dept. of Justice, Washington, D.C., were on brief, for appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and BOYLE,* District Judge.

BOWNES, Circuit Judge.

Now that the Supreme Court has reversed us and decided, contrary to our opinion, that the term "enterprise" as used in the Racketeer Influenced and Corrupt Organizations Act (RICO) encompasses both legitimate and illegitimate enterprises, *United States v. Turkette,* —— U.S. ——, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), we turn to the other issues in these cases.

A short case history is in order. The nine-count indictment named thirteen defendants. Prior to trial seven defendants pleaded guilty. Mistrials were granted during the course of the trial to two defendants. At the close of the Government's case, the court dismissed the RICO conspiracy count (Nine) against John Vargas. When the case went to the jury, the defendants were Novia Turkette, Jr., John Vargas, Phillip A. Fraher, Jr., and Gabriel DeMarco. The lineup of defendants and the indictment was:

Count One, distribution of Schedule II controlled substances—Turkette and Fraher;

Count Two, mail fraud based on an arson generated insurance claim—Turkette and Vargas;

Count Three, mail fraud based on an arson generated insurance claim—Turkette and Vargas;

Count Four, mail fraud based on an arson generated insurance claim—Turkette and Vargas;

Count Five, mail fraud based on an arson generated insurance claim—Turkette and Vargas;

Count Six, mail fraud based on a false insurance claim for a stolen car (car was deliberately burned)—Turkette and Fraher;

Count Seven, mail fraud based on a false insurance claim for a stolen car—Turkette and Fraher;

Count Eight, mail fraud based on a false insurance claim for a stolen car—Turkette;

Count Nine, the RICO conspiracy count—Turkette, Fraher and DeMarco.

Turkette was convicted on all nine counts. Fraher was convicted on Counts Six and Seven and acquitted on Counts One

* Of the District of Rhode Island, sitting by designation.

8

and Nine. DeMarco was acquitted on Count Nine, the only one charged. Vargas was convicted on Count Two and acquitted on Counts Three, Four and Five.

We note at the outset that neither defendant has seriously challenged the sufficiency of the evidence. Our review of the trial transcripts reveals a solid evidentiary footing for the verdict. See our prior opinion for a summary of the evidence. *United States v. Turkette*, 632 F.2d 896, 908–09 (1st Cir. 1980), *rev'd,* —— U.S. ——, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

We first consider the claims of defendant Vargas:

 1. That joinder was improper initially and the district court erred in not granting severance during the trial;

 2. That the court-ordered seating arrangement was prejudicial; and

 3. That the court erred in refusing to give two requested instructions.

*Joinder and Severance*

■ We now reconsider the issue of joinder and severance in the light of the Supreme Court's holding that RICO applies to this case. Vargas' first argument is that joinder was improper under Federal Rule of Criminal Procedure 8(b)[1] because the indictment did not allege that he knew that there was a diverse criminal enterprise or that he intended to associate himself with it and was, therefore, legally insufficient. Count Nine of the indictment simply does not admit of such a reading. It alleged that Vargas was an associate of Turkette (Para. 1(k)), that all named defendants were associated as an "enterprise" for the purpose of illegally trafficking in narcotics and other dangerous drugs, committing arsons, using the mail to defraud insurance companies, bribing police officers and attempting to corruptly influence state court trials (Para. 1(*o*)), that the defendants con-

spired to violate 18 U.S.C. § 1962(c) (Para. 2), that the defendants, as part of the conspiracy, would engage in a pattern of racketeering activity affecting interstate commerce (Para. 3), that as part of the conspiracy Vargas and Turkette would burn two houses and submit fire insurance claims for their value (Paras. 5, 6, 7 & 8). We think Count Nine of the Indictment was legally sufficient. It alleged that Vargas joined a criminal enterprise, knew the criminal activities that were to be conducted and agreed to participate in the enterprise by committing two acts of arson so as to obtain insurance payments. Defendant's reliance on *United States v. Diecidue*, 603 F.2d 535 (5th Cir. 1979), *cert. denied*, 446 U.S. 912, 100 S.Ct. 1842, 64 L.Ed.2d 266 (1980), and *United States v. Elliott*, 571 F.2d 880 (5th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978), is misplaced. In each of those cases the court found that the evidence was not sufficient to sustain a conviction on the RICO conspiracy count as to one of the defendants. Neither *Diecidue* nor *Elliott* suggest any grounds for holding this indictment legally invalid.

■ The next ground advanced for invoking Rule 8(b) is that the RICO count was brought without a reasonable evidentiary foundation. We construe this to mean that Vargas claims that the Government acted in bad faith in including him in Count Nine. RICO permits the Government to cast a wider net than it could under traditional conspiracy principles. *See United States v. Elliott*, 571 F.2d at 902. Thus, the breadth of Count Nine does not, in itself, evidence bad faith on the part of the Government. Nor does the Government's failure to prove that Vargas was a conspirator show bad faith. In *United States v. Luna*, 585 F.2d 1, 4 (1st Cir.), *cert. denied*, 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978), we held that a jury acquittal on a

---

1. Federal Rule of Criminal Procedure 8(b) provides:

 (b) *Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transac-

tion or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

conspiracy count did not prove "the impropriety of having joined the offenses and accused individuals in the same indictment." We do not think that the district court's granting defendant's motion for a judgment of acquittal on the conspiracy charge at the end of the Government's case demonstrates bad faith. Finally, Vargas has not introduced any independent evidence of bad faith. "A defendant alleging prosecutorial bad faith in joining multiple counts has the burden of establishing it." *Id.* at 4. We think the same rule applies to joinder of defendants. Based on our review of the evidence, we cannot say, without more, that the Government acted in bad faith. The RICO conspiracy count supplies the bond necessary to join Vargas with the other defendants because all are charged with participating "in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). It follows that there was no Rule 8(b) violation.

 The next question is whether the court should have ordered a severance under Federal Rule of Criminal Procedure 14.[2] The standard of review is abuse of discretion. To prevail, the defendant must make a strong showing of prejudice. *Id.* at 4–5. Vargas's position is that the evidence against Turkette relative to the drug distribution operation would not have been admissible against him in a separate trial on mail fraud alone and, therefore, the introduction of such evidence was bound to unfairly prejudice him. In any conspiracy case there is a danger that the bad acts of one conspirator may slop over onto the other defendants. In a case with a RICO conspiracy count it is inevitable that some of the peripheral participants will be tarred by the brush of the entire criminal enterprise. The answer, however, is not automatic severance, but careful control of the case by the trial judge, as was exercised here. This case started with six defendants and ended up with four. We think the jury must have understood from the way the trial proceeded that each defendant was to be judged separately. The dismissal of the RICO count as to Vargas could only have highlighted for them that there must be an individualized assessment of the evidence. And the court's instructions on this was clear and complete. Furthermore, "[n]either the number of counts nor the number of defendants was so large as to give rise to concern that the jury could not differentiate among them." *Id.* at 5. Nor can we ignore the jury's verdict which reflects a careful dissection of the evidence as it applied to each defendant. Although we do not think that the issue of prejudicial joinder, either under Rule 8 or 14, should hinge on whether the jury returned a discriminating verdict, that is a factor to be taken into consideration. *See United States v. Richman*, 600 F.2d 286, 299–300 (1st Cir. 1979). We find no abuse of discretion in the court's refusal to order a severance and, therefore, no violation of Federal Rule of Criminal Procedure 14.

### The Seating Arrangement

 This claim borders on the frivolous. At the start of the trial the district court directed the defendants to sit together in the first row of the spectator's section of the courtroom and excluded all others from that area. The only defendant to object to this was Vargas. His first argument is that the district court established "a prisoner's row" similar to the use of the dock in Massachusetts which was criticized by us in *Walker v. Butterworth*, 599 F.2d 1074, 1080–81 (1st Cir.), *cert. denied*, 444 U.S. 937, 100 S.Ct. 288, 62 L.Ed.2d 197 (1979). We think the analogy inapt; the dock is a four-foot high box in which the accused is isolated. In *Walker* we pointed out that its use might be analogized to wearing prison clothes during a trial, which was held unconstitutional in *Estelle v. Williams*, 425

---

**2.** Federal Rule of Criminal Procedure 14 provides in pertinent part:

 If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the courts may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Here, the defendants sat in the front row of the spectator's area of the courtroom, hardly a place calculated to strip an accused of his presumption of innocence in the eyes of the jury. The defendants were no more isolated than they would have been if seated with their attorneys, as is ordinarily the case.

As to the argument that the seating arrangement suggested to the jurors that they should infer the guilt of all from the guilt of one, we only remark that the defendants had to be seated somewhere, and from the start of the trial the jury knew that all of them, including Vargas, were charged with conspiracy. If the jury received a suggestion of guilt by association, and their verdict belies this, it was the result of the conspiracy charge, not the seating arrangement.

Moreover, this is a matter best left to the discretion of the trial court. How to arrange the seating for defendants and counsel depends upon such a variety of factors, e. g., the size of the courtroom, the number of spectators, the number of defendants and lawyers, acoustics, security provisions, etc., that we would be loathe to interfere unless there was a clearcut abuse of discretion. See United States v. Rios Ruiz, 579 F.2d 670, 674 (1st Cir. 1978). It is significant that Vargas does not claim that he could not communicate effectively with his attorney during the trial, nor has he suggested an alternative seating arrangement. There was no abuse of discretion.

*The Failure To Give Requested Instructions*

1. *The Requested Instruction Concerning Bribery Payments*

■ The chief Government witness was Kenneth Landers, Turkette's principal associate in the enterprise and the crimes charged. He testified that Turkette and his father paid him money, bought him a car and promised him more money not to testify at the trial. Vargas requested that the court caution the jury not to infer from the bribery any consciousness of guilt on the part of any defendant unless the jury could find beyond a reasonable doubt that a particular defendant was involved in the robbery. The requested instruction used the words of 1 Devitt and Blackmar, Federal Jury Instructions § 15.10, at 465–66 (1977). Although the court did not give the instruction as requested, it did cover the matter adequately. At the time Landers started to testify about the bribes the jury was told that it was not to consider the conversations "against the defendants who were not parties to the conversation on the one-hand, or who were not present at the meeting on the other hand." The charge to the jury emphasized that "it is your duty to give separate personal consideration to the case of each individual defendant." This was elaborated on and explicated fully. In addition, the court charged specifically as to Vargas:

I want to remind you that I excluded a lot of evidence in this case and did not admit it as to Mr. Vargas. I admitted it as to other defendants. That exclusionary order is still in effect and should be observed by you. The evidence as to the drug store robberies, drug sales, the payoffs to Charlie Werner and other evidence, which I am sure you will recall, I allowed in as to the three defendants other than Vargas. Whether or not Vargas is guilty on any one of these four counts is to be decided without reference to that evidence which was admitted only as to the other defendants and Counts 2, 3, 4 and 5 as to Mr. Vargas are to be decided on the evidence which was admitted as to him.

The words of Devitt and Blackmar might have added some frosting to the cake, but the court's instructions were ample fare and easily digested.

2. *Failure To Give an Instruction Based on Defendant's Theory of the Case*

■ Vargas fails to quote in his brief the requested instructions and has not even bothered to refer to it by number. We, therefore, rely on the Government's brief which identifies it as Vargas' requested instruction No. 23. After reading the re-

quest,[3] we agree with the Government that it was not a theory of the case request but combined comments on the evidence with a request for a cautionary instruction as to Landers' testimony. The comments were correctly ignored by the court and the cautionary instruction was given, although not in the language requested.

We now turn to the case of Novia Turkette, Jr. The Supreme Court's decision has effectively demolished his claim of prejudicial joinder and we need spend no time on it.

 The only issue is whether the district court erred in allowing Vargas to introduce in evidence photographs that Turkette alleges were illegally seized because not described in the warrant. The photos did not show Turkette engaged in any criminal activity; they were group pictures of Turkette and certain of the other defendants. Vargas, who was not in the picture, introduced them to prove that he was not associated with Turkette and the other defendants. Although we have not been told how Vargas knew of the photos, Turkette does not claim that the Government used Vargas as a conduit for introducing evidence that it could not put in its case-in-chief.[4]

We need not decide whether the exclusionary rule applies in these circumstances because the photos were not prejudicial. In light of Turkette's conviction on all counts, the prejudice, if any, would be to those photographed with him.

*The convictions in both cases are affirmed.*

3. Vargas' requested instruction No. 23 was as follows:

In regard to the allegations of mail fraud, the Defendant John Vargas takes the position that the Government has failed to prove his guilt to a moral certainty and beyond a reasonable doubt.

The only evidence upon which the Government relies to prove that the Defendant John Vargas was involved in or had knowledge of the alleged arsons comes from the testimony of Kenneth Landers, a/k/a George Gobel. In deciding what weight, if any, you will give this testimony, you must consider that Landers is an immunized accomplice and an admitted liar whose testimony is therefore highly suspect. In addition, you should also consider the personal motive of Landers to testify against John Vargas which you may find to have arisen out of an unrelated confrontation between them.

4. The Government disputes that there was an illegal seizure, claiming that the pictures were in plain view.