**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Peter DOUNIAS, Defendant-Appellant.**

No. 84–2998.

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1985.

Decided Nov. 13, 1985.

Adam Bourgeois, Chicago, Ill., for defendant-appellant.

Mitchell A. Mars, Chgo. Strike Force, Dept. of Justice, Chicago, Ill., for plaintiff-appellee.

Before FLAUM and EASTERBROOK, Circuit Judges, and WEIGEL, Senior District Judge.*

FLAUM, Circuit Judge.

Appellant Peter Dounias appeals his conviction, following a jury trial, of one count of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 (1980). Appellant contests the district court's ruling that severance from his co-defendants was not necessary and challenges the sufficiency of the evidence upon which this conviction was based. We affirm with regard to both issues and uphold the conviction.

## I.

This case arose out of an alleged conspiracy to extort protection money out of the owners of "gay bars" on the near north side of Chicago. Dounias and his four co-defendants were charged in a four count indictment with conspiracy to extort, extortion, and attempted extortion under the Hobbs Act, 18 U.S.C. § 1951 (1980).[1]

---

* The Honorable Stanley A. Weigel, Senior District Judge for the Northern District of California, is sitting by designation.

1. 18 U.S.C. § 1951 provides:
   (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
   (b) As used in this section—
   (1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or mem-

Count one of the indictment alleged a conspiracy among all five defendants that existed from 1978 through 1979. The second count charged Dounias alone with the extortion of protection money from bar owner Robert Hugel. The third count was also an extortion charge directed at three of the defendants and involving a different victim; appellant was not named in this count. The final count was also limited to Dounias and alleged that he attempted to extort funds from a third bar owner.

At trial the government attempted to develop the theory that the three substantive criminal acts arose out of a conspiracy headed by defendant DiVarco, who was the only defendant not identified as involved in any particular act of extortion. Appellant was not alleged to be the central figure in the operation. The government presented evidence, consisting of direct testimony and taped-conversations recorded by agents of the Federal Bureau of Investigation, in an endeavor to establish that, while there were no specific acts of violence or explicit threats thereof, defendants employed veiled threats to induce payments from their victims. Upon completion of the government's case-in-chief the trial court granted an acquittal on the conspiracy charge to one of the defendants, John Matassa, on the grounds of insufficient evidence. At the close of all evidence the trial court granted a second acquittal for lack of sufficient proof of the conspiracy count to defendant DiVarco, the alleged central figure. Following the two acquittals, Judge Marshall voiced concern about the possible

need to sever but found that the initial joinder of the defendants based upon the conspiracy count was in good faith and that a severance and mistrial this late in the process would be inappropriate.

The remaining counts were submitted to the jury and all remaining defendants were acquitted on all counts with the sole exception of the appellant. Dounias was found guilty of count two, the extortion of Robert Hugel. On appeal Dounias argues that (1) the trial court was in error in not allowing severance and declaring a mistrial since the conspiracy count was insufficient to justify joinder under Rule 8(b) of the Federal Rules of Criminal Procedure; and (2) that the evidence of the extortion of Hugel did not adequately support the jury verdict.

## II.

■ Rule 8(b) of the Federal Rules of Criminal Procedure [2] provides for the joinder of multiple defendants "if they are alleged to have participated in the same act or transaction or in the same series of transactions constituting an offense or offenses." Conspiracy charges, such as the one alleged in count one, can provide the bond that links the divergent substantive crimes into a single transaction for Rule 8(b) purposes. *See United States v. Vanichromanee*, 742 F.2d 340, 347–48 (7th Cir. 1984); *United States v. Hattaway*, 740 F.2d 1419, 1423–24 (7th Cir.), *cert. denied*, 105 S.Ct. 448, 83 L.Ed.2d 708 (1984); *United States v. Ras*, 713 F.2d 311, 315 (7th Cir.1983). The only way for Dounias to

ber of his family or of anyone in his company at the time of the taking or obtaining.

(2) The term "extortion" means the obtaining of property from another, with his consent induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

(c) This section shall not be construed to repeal, modify or affect section 17 of Title 15, sections 52, 101–115, 151–166 of Title 29 or sections 151–188 of Title 45.

2. Rule 8(b) provides:

(b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

attack the joinder as improper is to prove the conspiracy count was added in bad faith.[3] *See Hattaway,* 740 F.2d at 1424. *See also Schaffer v. United States,* 362 U.S. 511, 514, 80 S.Ct. 945, 947, 4 L.Ed.2d 921 (1960); *United States v. Garza,* 664 F.2d 135, 142 (7th Cir.1981). The fact that all the defendants were acquitted on the conspiracy count does not alone establish bad faith.[4] *Schaffer,* 362 U.S. at 516, 80 S.Ct. at 948 ("Nor can we fashion a hard-and-fast formula that, when a conspiracy count fails, joinder is error as a matter of law.") The defendant bears the burden of

affirmatively establishing bad faith. *See United States v. Garza, supra,* at 142.

The appellant attempts to establish the government's bad faith in bringing the conspiracy charge by attacking the sufficiency of the evidence. After reviewing the record we cannot conclude that the trial court's factual determination of the non-malignant nature of the prosecutor's motives is clearly erroneous. *See Robinson v. Wade,* 686 F.2d 298, 309 (5th Cir.1982) ("A finding that the Government's acts do not amount to intentional misconduct is a finding of fact, ... as such, it will not be set

**3.** In our recent decision in *United States v. Velasquez,* 772 F.2d 1348 (7th Cir.1985) the court noted that the line of cases holding that failure to obtain conviction on the linking charge does not create a misjoinder in the absence of evidence of prosecutorial bad faith was in conflict with decisions in the First Circuit. That court has held that for joinder to be proper the linking count "must be added in good faith *and,* judging from the face of the indictment and the evidence adduced at trial, must have a *firm basis in fact." United States v. Arruda,* 715 F.2d 671, 678 (1st Cir.1984) (emphasis added). Although the panel in *Velasquez* suggested a possible reconciliation of the grounds "that a complete failure to prove a linkage between two or more sets of defendants could give rise to an inference of bad faith," they declined to reach the issue. At 1354.

We do not feel compelled to resolve this issue here for a number of reasons. First, it is not obvious that a true conflict exists. If the *Velasquez* panel's suggested reconciliation accurately reflects the status of the law in the First Circuit then the mode of analysis adopted here is in accord, since appellants' claim and our rejection thereof are based on the sufficiency of the evidence adduced at trial. Second, our analysis of the record here establishes that regardless of the exact standard utilized the facts supporting the conspiracy are sufficient to support a finding of good faith by the government and also would satisfy a more objective inquiry into the factual adequacy of the conspiracy count as the basis for Rule 8 joinder. Finally, and without expressing any opinion on the merits of the First Circuit position, we believe that the resolution of this possible conflict should await a case where the exact issue is clearly framed before the court. A thorough analysis of the subtle distinctions between the approaches should be conducted based on a factual setting where the standard used affects the merits.

**4.** Appellant attempts to propose a "retroactive misjoinder" theory where the failure of the conspiracy claim at any point in the trial would establish that the initial joinder of parties was

inappropriate. It is argued that the First Circuit adopted this theory in its decision in *United States v. Turkette,* 632 F.2d 896 (1st Cir.), *reversed in part,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1980) *on remand,* 656 F.2d 5 (1981). Dounias' argument reveals a misunderstanding of the First Circuit position and a failure to examine the subsequent history of the case relied upon. In the first panel decision in *Turkette* the court held that the Racketeer Influenced and Corrupt Organizations Act (RICO) did not apply to "illegitimate enterprises" and thus the joinder of parties based on the RICO enterprise/conspiracy was improper. Following the Supreme Court's reversal on the RICO enterprise issue the First Circuit reconsidered the severance issue and found joinder proper.

In *United States v. Luna,* 585 F.2d 1, 4 (1st Cir.), *cert. denied,* 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978), we held that a jury acquittal on a conspiracy count did not prove "the impropriety of having joined the offenses and accused individuals in the same indictment." We do not think that the district court's granting defendant's motion for a judgment of acquittal on the conspiracy charge at the end of the Government's case demonstrates bad faith.

656 F.2d at 8–9. To the extent the first panel decision in *Turkette* has any precedential value, it can only be read to apply where the claim linking the defendants is legally, as opposed to factually, inadequate. Where as here the count at issue is a conspiracy charge brought in good faith and with adequate factual support (see *supra,* note 3) the law in the First Circuit clearly supports our analysis. *See United States v. Luna,* 585 F.2d 1 (1st Cir.), *cert. denied,* 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978).

Whether the concept of "retroactive misjoinder" exists or should ever be recognized is not before the court at this time. We find here, as we did in *United States v. Velasquez,* 772 F.2d 1348, 1354, 1356 (7th Cir.1985), that there is no reason to sketch out the breadth of this doctrine on the facts of this case.

aside unless shown to have been clearly erroneous.") (citing *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)). There is ample evidence to support a claim that a conspiracy existed among the five defendants. The government introduced evidence establishing that (1) Dounias in the course of his shakedown of Hugel made it clear that he was not working alone, (2) the defendants were observed meeting together following some of the alleged extortions and at various other times, (3) some of the defendants jointly participated in alleged acts of extortion, and (4) various defendants were heard to comment to third parties or victims concerning the extortion activities of their co-defendants. Judge Marshall's ruling that joinder was proper under Rule 8(b) must be sustained.

█ Even if joinder was proper under Rule 8(b), appellant argues that severance still should be granted under Rule 14 of the Federal Rules of Criminal Procedure [5] due to the prejudice to the defendant's rights resulting from the joint trial. The decision to grant or deny severance is left to the judgment of the trial court and we will not reverse this decision absent a clear abuse of discretion. *United States v. Harris,* 761 F.2d 394, 400 (7th Cir.1985); *United States v. Hedman,* 630 F.2d 1184, 1200 (7th Cir. 1980), *cert. denied,* 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981). In order to meet this burden the defendant must show that the joint trial resulted in actual prejudice. *United States v. Hattaway,* 740 F.2d 1419, 1424 (7th Cir.1984); *United States v. Ras,* 713 F.2d 311, 315 (7th Cir.1983).

Appellant points to a number of examples of alleged prejudicial testimonial evidence. Examining each of Dounias' claims individually is not necessary since they uniformly relate to the government's attempt to prove the existence of the conspiracy. During the course of the trial evidence which had no direct relevance to the extortion charges against Dounias was admitted for purposes of establishing that a criminal organization, which included appellant, had been created. Dounias argues that were he tried separately this "prejudicial" evidence would not have been admitted against him. This argument is devoid of merit and has been previously rejected by this court in *United States v. Hattaway, supra* at 1424. Since we have found the conspiracy charge to have been brought in good faith, Dounias would have faced the conspiracy theory, and all evidence admissible to establish it, in his individual trial. Any prejudice that is claimed to have resulted from the testimony at issue would not be the product of the joint trial.[6] The trial court's decision not to grant severance was in accord with the policy of judicial economy which "favors [the] joint trial of defendants where largely the same evidence would be admitted in separate trials of each defendant." *Hattaway,* 740 F.2d at 1424; *see also United States v. McPartlin,* 595 F.2d 1321, 1333 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). Under these circumstances we cannot find that the trial court abused its discretion.

### III.

█ Dounias also challenges the sufficiency of the evidence upon which his con-

---

**5.** Rule 14 provides:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the

government intends to introduce in evidence at trial.

**6.** Dounias does cite to one instance where prejudicial testimony was heard by the jury during the government's offer of proof of the conspiracy. The record reveals that Judge Marshall had the testimony struck from the record and properly admonished the jury to ignore the evidence. Dounias has provided no other substantial evidence of actual prejudice or testimony that was related to neither his criminal acts nor the alleged conspiracy.

viction for the extortion of Robert Hugel was based. After carefully examining the record we conclude there is ample evidence upon which a jury could find that Dounias was guilty of extortion. Appellant has devoted a substantial portion of his argument on appeal to whether the victim, Hugel, actually perceived himself to be threatened. The state of mind of the victim is in large part irrelevant. Where, as here, the evidence supports a jury finding of an implied threat of physical or economic harm, we have repeatedly held that the fact that the target of the extortion was not actually threatened (whether because of impossibility or knowledge of F.B.I. protection, for example) does not eliminate guilt. *See, e.g., United States v. Lisinski,* 728 F.2d 887, 890–92 (7th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984); *United States v. Rindone,* 631 F.2d 491 (7th Cir.1980).

### IV.

For these reasons, Dounias' Hobbs Act conviction is affirmed.