**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Donald G. ORRIS, Defendant–**
**Appellant.**

No. 02–3331.

United States Court of Appeals,
Sixth Circuit.

Jan. 8, 2004.

Terry Lehmann, Asst. U.S. Attorney, U.S. Attorney's Office, Cincinnati, OH, David J. Bosley, U.S. Attorney's Office, Columbus, OH, for Plaintiff–Appellee.

Michael M. Losavio, Louisville, KY, for Defendant–Appellant.

Before COLE, CLAY, Circuit Judges; and QUIST, District Judge.*

## OPINION

QUIST, District Judge.

Defendant, Donald G. Orris, appeals his convictions for violation of the Hobbs Act, 18 U.S.C. § 1951, aiding and abetting the brandishing of a firearm during and in

---

* The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

relation to a crime of violence, 18 U.S.C. § 924(c), and possession of a firearm by a career criminal. 18 U.S.C. §§ 924(g), 924(e). Orris raises several issues on appeal. Upon thorough review of the record and authorities, we AFFIRM Orris' convictions.

## I. FACTS

On December 23, 2000, members of the Columbus, Ohio, Police Department SWAT and Helicopter units began surveillance of Orris. Surveillance continued from 2:30 p.m. until 9:50 p.m. and began again on December 24 at 8:00 a.m. On the morning of December 24, Orris drove to a residence on Lansing Street and picked up Michael Burgett. The two men returned to Orris's residence on 13th Street. Orris's girlfriend, Mary Taylor, testified that Orris· retrieved an item from the basement, which she described as a gun wrapped in a jacket. She never actually saw the gun, and Orris never identified it as such to her. Orris told Taylor that he was getting rid of the item and going back to work.

After leaving the residence, Orris and Burgett drove to various strip malls in central Ohio, stopping in several parking lots but entering none of the businesses. Eventually, they reached the Smoker's Value store. They circled the parking lot slowly and then parked. Orris entered the store for a short time, then returned to the vehicle. Orris and Burgett circled around the area for a short time and then returned to the parking lot. Orris parked the car behind Smoker's Value.

Burgett exited the vehicle; Orris remained in the car. Just as Burgett was about to enter the store, he pulled a mask over his face and pulled a short-barreled shot gun from under his clothes. At this point, some of the officers moved in to take Orris into custody. Inside Smoker's Value, Burgett brandished the shotgun at the employees and customers, telling everyone to lie down. He ordered an employee to give him the money in a cigar box under the counter that contained $518. Burgett exited through a door of the business. Burgett looked in the direction of Orris's car where police officers were arresting Orris. Burgett ran away from where the car was parked. Burgett was shot and killed in the resulting confrontation with police.

Orris was charged with a Hobbs Act violation, 18 U.S.C. § 1951, with aiding and abetting the use, carrying, and brandishing of a short-barreled shotgun during and in relation to a crime of violence, 18 U.S.C. § 924(c), and being an armed career criminal in violation of 18 U.S.C. §§ 924(g), 924(e). He was convicted on all three counts.

## II. ANALYSIS

### 1. Hobbs Act Jurisdiction

■ Orris argues that there was insufficient evidence supporting the interstate commerce jurisdictional element for a Hobbs Act violation. Even a *de minimis* effect on interstate commerce is sufficient to establish the interstate commerce nexus under the Hobbs Act. *United States v. Mills*, 204 F.3d 669, 671 (6th Cir.2000). The government introduced evidence that the Smoker's Value store purchased 99% of its merchandise from outside Ohio. We hold that even though the amount stolen in the robbery was not large, the Smoker's Value store was engaged in the interstate sale of tobacco products, and the crime met the *de minimis* standard adopted by this court.

We find *United States v. Wang*, 222 F.3d 234 (6th Cir.2000), to be readily distinguishable from the instant case. *Wang* held that *where a private individual is robbed in her own home*—as opposed to

the robbery of a business entity in interstate commerce—the mere fact that $1,200 of the $4,200 stolen came from a business in interstate commerce is not sufficient to establish even a *de minimis* connection to interstate commerce. *Id.* at 240. The *Wang* Court explained that, where a private individual is robbed, "the required showing is of a different order than in cases where the victim is *a business entity.*" *Id.* at 238 (emphasis added).

## 2. Sufficiency of the Evidence

█ Orris argues that there was insufficient evidence at trial to support his conviction. Since defendant failed to renew his Rule 29 motion at the close of all the evidence, Defendant waived any objection to the sufficiency of the evidence. *United States v. Nesbitt,* 90 F.3d 164, 167 (6th Cir.1996). Therefore, our review "is limited to determining whether there was a manifest miscarriage of justice." *United States v. Price,* 134 F.3d 340, 350 (6th Cir.1998)(quoting *United States v. Cannon,* 981 F.2d 785, 789 (5th Cir.1993)). "A miscarriage of justice exists only if the record is devoid of evidence pointing to guilt." *Id.* (internal quotations omitted).

Here there was no manifest miscarriage of justice. A rational jury could conclude that Orris drove Burgett to Orris's residence where Orris retrieved the gun that Burgett used in the robbery, that Orris drove Burgett to several locations to scout out a location for the robbery, and that Orris—knowing that Burgett was going to rob the store with the gun—waited in the car, as the getaway driver, for Burgett while Burgett robbed the store. Those conclusions form a sufficient basis for a conviction under an aiding and abetting theory of liability for all three counts of conviction.

## 3. Shackling

█ Orris argues that the district court committed reversible error when it required that his legs be shackled under the defense table, which was draped with a shroud so that the shackles could not be seen. The table occupied by the prosecutors was draped in the same way. We review shackling decisions for abuse of discretion. *Kennedy v. Cardwell,* 487 F.2d 101, 110 (6th Cir.1973). In *Kennedy,* this Court held that a defendant may permissibly be shackled only upon a *clear showing* of necessity should shackles ever be employed and only as a "last resort." *Id.* at 111. The burden "to show the necessity of any extreme physical security measures" is on the prosecution. *Id.* at 107. "The decision to shackle a defendant rests in the first instance in the discretion of the trial judge, and the test on review is whether the trial judge has abused this discretion." *Id.*

We believe that the district court should have more clearly stated on the record, based upon facts in the record, the reasons he believed that shackling Defendant was necessary. Nevertheless, there is no indication whatsoever in the record that the shackling prevented Orris from consulting with his attorney, was ever seen by the jury, or otherwise prejudiced Orris. Therefore, we will not reverse Orris' conviction because of the shackling.

## 4. Police Testimony Regarding Surveillance Prior to the Crime

█ Orris argues that the trial court improperly denied its motion *in limine* to exclude the testimony regarding police surveillance of Orris prior to the robbery. Orris argues that this evidence was both irrelevant and unfairly prejudicial. The district court's decision to admit the evidence is reviewed for abuse of discretion,

and even if the district court abused its discretion a new trial is required only if substantial rights of the defendant are affected. *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir.1993).

The testimony was relevant for two reasons. First. the testimony was relevant to whether Orris knew that Burgett intended to hold up Smoker's Value. The surveillance testimony included testimony that Orris and Burgett drove around for about two hours and visited six or seven strip malls where they merely stopped in the parking lot but did not enter any of the businesses. This testimony, as the government argues, indicates that Orris and Burgett were looking for a place to rob. Second, the testimony explains the nature of the police presence at the scene. Without any indication that Orris and Burgett were under surveillance, the later testimony describing the actual robbery would make little sense in that it would be difficult for a trier of fact to understand how an entire SWAT team with helicopter support was able to intervene the instant the robbery began.

■ Furthermore, any potential prejudice does not substantially outweigh the probative value of the testimony, confuse the issues, or mislead the jury. Finally, the district court limited any potential prejudice by allowing the government to go into detail regarding the surveillance only on the day of the robbery itself. The government was limited to merely mentioning that the surveillance began the previous day. The district court also gave a limiting instruction indicating that the jury should not consider the suspicions of the law enforcement officers or the fact that Orris was being followed or investigated as probative evidence of guilt or criminal conduct.

With these limitations and instructions, the district court properly allowed the evidence to be admitted.

### 5. Jury Instructions

Orris argues that the jury instructions constructively amended the indictment and created a standard of proof other than beyond a reasonable doubt. We reject these arguments.

■ The jury instructions as to the elements of the Hobbs Act violation were correct. "A constructive amendment results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Smith*, 320 F.3d 647, 656 (6th Cir.2003). We have carefully reviewed the jury instructions in this case, and we have concluded that there was no constructive amendment. There was no possible confusion as to the fact that the property to which the jury instructions referred was the $518 listed in the indictment. Moreover, there was sufficient notice of the *mens rea* requirements for two reasons. First, the Hobbs Act charge alleges that Orris interfered with interstate commerce "by robbery", a term defined in the statute itself. 18 U.S.C. § 1951(b)(1). There cannot be a robbery unless there is the required *mens rea*. Second, an indictment is legally sufficient if it contains the elements of the offense charged and fairly informs the defendant of the charges against which he must defend. *United States v. Maney*, 226 F.3d 660, 663 (6th Cir.2000). When an indictment is first challenged upon appeal, the indictment is to be liberally construed in favor of sufficiency, and the defendant must show prejudice before reversal.

*United States v. Gatewood,* 173 F.3d 983, 986 (6th Cir.1999). *United States v. Martinez,* 981 F.2d 867 (6th Cir.1992), held that an indictment, challenged for the first time on appeal that omitted the "knowingly or intentionally" element was nonetheless sufficient because it referenced the relevant section of the United States Code. *Id.* at 872. Finally, Orris has not argued that he was prejudiced by the alleged insufficiency of the indictment. The fact that Orris's main defense strategy at trial was to argue that he did not know what Burgett was going to do indicates that he knew that the scienter requirement was "knowingly."

■ We also affirm Orris' conviction for aiding and abetting the carrying and brandishing of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(B)(i). The defendant must show prejudice when he waits until appeal to challenge the sufficiency of the indictment. In the instant case, Orris was not prejudiced if the "knowingly" element was not in the indictment. (Assuming without deciding that "knowingly" is an element of an 18 U.S.C. § 924(c) charge.) The issue of whether Orris knew that Burgett had a firearm or was going to rob the store was the issue that was fully developed for the jury, and the jury was instructed that Orris must have "knowingly used or carried a firearm."

■ Orris argues that the jury instructions charged the jury both with the beyond a reasonable doubt standard and with a standard that Orris approximates to a preponderance of the evidence. Specifically, Orris complains of the use of the language: "Your sole interest is to ascertain the truth from the evidence of the case." According to Orris, "to ascertain the truth" does not imply doing so beyond a reasonable doubt. Jury instructions are reviewed as a whole in order to determine whether they "adequately inform the jury of the relevant considerations and provide a sound basis in law to aid the jury in reaching its decision." *United States v. Khalil,* 279 F.3d 358, 367 (6th Cir.2002). Here, the district court gave very clear and detailed instructions on the requirement for, and the nature of, finding Orris guilty beyond a reasonable doubt as to each element of each crime charged.

### 6. Substitution of Counsel

■ On the last day of trial, Orris made what the district court interpreted as a request for substitution of counsel. After holding a hearing, the district court found that appointed counsel had "vigorously and adequately represented" Orris. The court also found that the reason for Orris's request was that he was dissatisfied with the direction the trial was going—not because of any action by his counsel, but because of Orris's reaction to the properly admitted evidence against him. The district court thus concluded that Orris failed to show cause for the substitution and that the lateness of the request was further reason for denial.

We find nothing in the record to suggest that the district court's reasoned and deliberative decision was an abuse of discretion.

### 7. Juror Taint

■ On the last day of trial, when the jury was recessed for lunch, Orris' counsel brought to the court's attention that a woman with some connection to one of the jurors was in the audience. Defense counsel had requested that a courtroom deputy admonish the woman not to speak with the juror about the case, and suggested that they should perhaps call her in and have the court admonish her as well. The courtroom deputy reported to the court

that she had so admonished the woman and that the woman understood and said that she had not spoken about the trial with the juror previously. Defense counsel asked for nothing further. Orris now argues on appeal that the Sixth Amendment required the district court to examine the woman under oath and admonish her not to discuss the case. Orris requests that the case be remanded for a hearing on jury taint.

"When there is a *credible allegation of extraneous influences*, the court must investigate sufficiently to assure itself that constitutional rights of the criminal defendant have not been violated." *United States v. Rigsby*, 45 F.3d 120, 124–25 (6th Cir.1995) (emphasis added).

> But a district court is not obligated to conduct a hearing on every allegation of jury taint, because "not all communications with jurors warrant a hearing for a determination of potential bias." *Rigsby*, 45 F.3d at 124. And a defendant who waits until appeal to request a hearing bears a heavy burden, since the defendant has thereby effectively deprived this court of any basis for concluding that a hearing would be necessary, and asks us to presume that the district court would not have acceded to such a request, and would have done so for erroneous reasons.

*United States v. Walker*, 160 F.3d 1078, 1083 (6th Cir.1998). The present case is such a case that did not warrant a hearing for a determination of potential bias. Oftentimes, family and friends of jurors come to court to watch proceedings or to give rides to jurors. Most times, the trial judge is not aware of who the spectators are. Here the district court was informed that the spectator, who certainly had the right to sit in the courtroom, had some relationship with a juror. But, there was no communication between the spectator and the juror regarding the case. There was only the potential for communication. This potential was dealt with to the apparent satisfaction of all parties. No hearing was requested. The district court committed no error.

### 8. Cumulative Error

Having found no individual error, we find no cumulative error.

### III. CONCLUSION

Accordingly, Orris' conviction is AFFIRMED.