WAVERLY D. CRENSHAW, JR., CHIEF UNITED STATES DISTRICT JUDGE
After this Court orally denied Maurice Burks' Motion to Allow Defendant to Sit at Counsel Table (Doc. No. 1176), he filed a Notice of Continuing Objection (Doc. No. 1200), ostensibly to preserve the issue for appeal. Both the Motion and the Notice, however, invite several comments.
First, in the Notice, counsel writes:
Before the beginning of voir dire, this Court sternly lectured Mr. Burks, and his codefendants, about the fact that if they created a disturbance in the courtroom, they would be shackled during the trial. That warning was hardly necessary for Mr. Burks because, as previously noted, Maurice Burks has not done anything even remotely disruptive in any court proceeding held in this case. Nonetheless, it did serve to cause Mr. Burks to fear that any attempt to make counsel aware of his concerns regarding potential jurors could potentially lead to him being shackled.
(Id. at 2-3 n.4). This mischaracterizes what actually occurred. The record speaks for itself.
" 'The decision to shackle a defendant rests in the first instance in the discretion of the trial judge,' " but this "extreme security measure" should only occur "upon a clear showing of necessity." United States v. Orris, 86 F. App'x 82, 86 (6th Cir. 2004) (quoting Kennedy v. Cardwell, 487 F.2d 101, 110 (6th Cir.1973) ). Cognizant of this body of law, and notwithstanding the Marshal's preference and recommendation to the Court that all Defendants be shackled during trial in this multi-defendant case, the Court simply warned Defendants that if they misbehaved, they would be shackled *800 because being unshackled was a privilege and not a right. The Court did not state (or even intimate) that Defendants could not confer with, or pass notes to, counsel. Indeed, Burks' alleged "fear" is unsupported by anything in the record apart from counsel's unadorned assertion.
Second, in both his Motion and his Notice, Burks argues "this Court's current courtroom set-up, with Mr. Burks seated behind counsel, would not pass constitutional muster even in Tennessee state court," (Doc. No. 1200 at 3), and cites State v. Smith, 492 S.W.3d 224 (Tenn. 2016) for that proposition. While the Tennessee Supreme Court in Smith"h[e]ld that the trial court erred in denying the Defendant's request to sit at counsel table," id. at 224, it did so where the only reason that defendant was not allowed to sit at counsel table was because he was not an attorney. The Tennessee Supreme Court did not overrule its prior decision in State v. Rice, 184 S.W.3d 646 (Tenn. 2006), wherein the court wrote:
Requiring the defendant to sit directly behind his attorneys is not the same as making the defendant wear prison attire or shackles in the courtroom, which would suggest to the jury that he is a danger. While it is the better practice to allow a defendant to sit at counsel table, we conclude that the trial court did not abuse its discretion in this case by ordering the defendant to sit in the first row behind defense counsel's table. The seating arrangement did not impair the defendant's presumption of innocence. Nor did the court's order impact the defendant's ability to communicate with counsel. The defendant was seated on a bench less than two feet behind counsel table, and the court assured counsel that he could sit next to the defendant on the bench if he needed to talk to him.
Id. at 675. Thus, counsel for Burks misconstrues Smith by suggesting it creates a constitutional mandate that defendants sit at counsel table in every criminal trial in Tennessee state court.
Third, "defendants (who have to sit somewhere, clearly) usually sit at counsel table to assist in their defense," United States v. Correa-Osorio, 784 F.3d 11, 20 (1st Cir. 2015), but neither the Sixth Amendment, nor federal law mandates that this is constitutionally required. To the contrary, and as explained on the record, other more restrictive seating arrangements have been approved by federal courts of appeal.
For example, in United States v. Jones, 766 F.2d 994, 1004 (6th Cir. 1985), a case involving eighteen defendants, the Sixth Circuit found no Sixth Amendment violation where defendants "were seated in two rows immediately behind counsel table" because defendant were permitted to pass notes to their attorneys, counsel could get up and discuss matters with their clients, and no restrictions were placed on communications during recesses. Similarly, in United States v. Balsam, 203 F.3d 72, 82 (1st Cir. 2000), the First Circuit found no abuse of discretion where defendants were "seated in the front row of the spectator section ... only four to five feet from defense table" because "of the limited available space in the small courtroom, and by the obvious security concerns that might arise if ten people were to be seated at or behind the defense table," particularly because defendants could "freely communicate with their attorneys as they wished, either by walking the short distance to the defense table, or by passing written notes." In United States v. Levente, 277 F.3d 454, 465 (4th Cir. 2002), the Fourth Circuit approved a seating arrangement where defendants sat approximately six feet behind counsel and could only see the backs of witnesses because they were "permitted to consult freely *801 with their counsel, either by leaning forward and speaking directly to counsel or by passing notes." To be clear, as stated on the record, in this case: (1) each Defendant is less than four feet from counsel; (2) each Defendant can lean forward and easily talk to counsel; (3) each Defendant can pass a written note; (4) each Defendant can follow the testimony on the real-time transcript that appears on display screens in font large enough for each Defendant to read; and (5) each Defendant was invited to advise the Court if they had any problems communicating with counsel.
Fourth, Burks identifies what he perceives to be "numerous problems inherent in having a defendant seated someplace other than counsel table for a trial." (Doc. No. 1176 at 3). These are:
First, it will unquestionably restrict the communication between the defendant and counsel. Second, when a defendant needs to alert counsel to something a witness has said, it cannot be done as quickly as if the defendant was seated at counsel table. Third, when a defendant does alert counsel to something a witness has said, the jury will be able to notice it - which would not be true if the defendant was seated at counsel table - and, thus, provide emphasis to that testimony. Fourth, when a defendant does communicate with an attorney while seated behind counsel table, it will create a noise disturbance which will prevent counsel from hearing the testimony being received at that time. This will, in turn, prevent counsel from providing effective assistance of counsel during cross examination of that witness.
(Id. at 3-4).
Burks' concerns might have some validity if the courtroom was configured like the one at the Judge's Trial of 1947 (Nuremberg), or like those in the colonial courts of old that utilized prisoner docks. But that is not the set-up in this case. Instead, Defendants are sitting directly behind counsel, literally within arm's reach and free to communicate with counsel, both verbally and in writing as just explained.
Furthermore, juries are observant, and it would be naive to think that jurors do not notice when a defendant is whispering in his attorney's ear or passing a note. This is true whether the whisper or note comes from the side or behind. As for the "noise disturbance" that allegedly would distract counsel, this is a possibility that may occur in any multi-defendant case, whether a co-defendant is sitting next to counsel or behind counsel. Moreover, Burks' is represented by two court-appointed attorneys, meaning that one can stay focused on the questioning while the other is free to converse or receive notes from Burks, just as would occur if Burks were to sit at counsel table.
Fifth, Burks asserts "there is an implicit bias in having a row of African American defendants seated behind their almost entirely white attorneys" because "[i]t creates the visual illusion, for jurors, that counsel do not want their clients seated at counsel table with them and are afraid of their clients." (Doc. No. 1200 at 2). This very assertion is a classic example of implicit bias. Why the jury would think counsel would feel safer by having someone he supposedly is afraid of sitting behind him is unclear, but it seems more likely the jury would view the seating arrangements as necessary because the eight attorneys in this case are crowded around two tables that take up the majority of the left-hand side of the courtroom. As for the racial composition of the attorneys and their clients, that is something that will remain the same no matter where the Defendants and their lawyers are seated.
This Court's statement that the racial make-up of the attorneys and Defendants *802 will remain constant no matter the seating arrangement prompted counsel for Burks to write:
It is sadly ironic that one of the streets right outside the courthouse where Mr. Burks' trial is being conducted is named for Rosa Parks, the extraordinarily courageous woman who refused to be seated "at the back of the bus." The Court's observation makes it appear that Ms. Parks' brave actions were inconsequential because there was no meaningful difference between sitting with persons in the front of the bus and sitting behind them in the rear of the bus. Undersigned counsel do not believe this is correct.
(Doc. No. 1209 at 5 n.8).[1] Quite frankly, the suggestion that this Court does not acknowledge the importance Rosa Parks played in the Civil Rights Movement, and/or understand the mistreatment African American citizens endured even after the passage of Brown v. Board of Educations, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) is offensive. The Court assumes that counsel intended the remarks to be exercises in zealous advocacy, rather than being the impertinent remarks that they are. The real "irony" is counsel's failure to recognize that Rosa Park had a constitutional right to sit anywhere on the bus that she pleased, but Burks does not have the concomitant and absolute constitutional right to sit at counsel table, even though that would be the Court's preference in an ideal world.
Even more offensive to this Court and the legacy of Rosa Parks is the gall to compare this discrete legal issue to Rosa Parks. Ms. Parks understood racism -- raw and painful. She grew up when racial segregation was the rule if not the law at work, at school, at church and in every facet of life. Legal segregation was endorsed by some state law and ordinances and reinforced by the nefarious behavior of the Ku Klux Klan. Ms. Parks never accepted this reality. She joined the NAACP and became a forceful advocate for desegregation. Through her leadership in the NAACP, she began to erode segregation in schools and voting rights. She did all these things long before her refusal to give up her bus seat on December 1, 1955. The Sixth Amendment issue raised by Burks' counsel is important, but it pales in comparison to the defiance, suffering and commitment demonstrated in the life of Rosa Parks.
Sixth, Burks proposes what he believes to be a simple solution: the tables can be moved a few feet in each direction, with his table placed closer to the bench. Counsel for Elance Lucas proposes that counsel's wife, an interior decorator, measure the courtroom to see whether a third table will fit. Alternatively, Lucas suggests that the Court unbolt the first spectator's bench from the floor and remove it from the courtroom.
Respectfully, this Court's staff is pretty handy with a tape measure, but more goes into the equation than whether tables can be moved. "[C]ourtroom seating arrangements 'depend[ ] upon ... a variety of factors, e.g. , the size of the courtroom, the number of spectators, the number of defendants and lawyers, acoustics, security provisions, etc.[,]' " Balsam, 203 F.3d at 82 (quoting United States v. Turkette, 656 F.2d 5, 10 (1st Cir. 1981) ). Such factors were taken into account when the Court formulated the present configuration after numerous logistical planning meetings with court personnel.
Leaving aside that the table that normally sits in the courtroom is centered *803 over power sources in the floor for both the laptops and realtime display monitors and that an additional table has been added, moving Burks' table forward means that it will be closer to the bench. It also means that counsel will have to be seated at the end of the table closest to the bench, and his or her view of the witness and the jury will likely be blocked by the Courtroom Deputy, the Court Reporter, and the half wall that surrounds their work stations. It will also reduce the access to the well of the court for the marshals who are also sitting along the wall on the left side of the courtroom. Adding a third table and/or pushing the other table back towards the spectator's section will mean that the view of those sitting at the end of the table will often be blocked by the prosecutors who sit at a table that is perpendicular to defense counsel's table. At least with the way the courtroom is now configured, all of the lawyers and the Defendants can see the jury and the witnesses. More importantly, Defendants can communicate effectively with their counsel.
Finally, in both his Notice and his Motion requesting photographs, Burks' observes that "[t]he Court has not yet filed a written Order" on his request to sit at counsel table. (Doc. No 1200 at 2). It is true that the Court in this case has issued three Memorandum Opinion and Omnibus Orders that have resolved literally dozens of substantive motions, and has issued many other Orders that have resolved other motions, but this should not be taken as suggesting that the Court intends to issue written rulings on every motion that is filed during the course of this two-month trial. This is particularly true when a motion requires no written decision. Thus, for example, the Court orally denied Marcus Darden's Request to Allow Questioning About Race and Racial Bias in Voir Dire (Doc. No. 1203) because counsel was not precluded from questioning jurors about their race and, to the extent counsel misunderstood, counsel for the remaining three Defendants could take up the mantle when they questioned jurors. Regardless, to the extent that Burks desires a written ruling, this is it: the Motion to Allow Defendant to Sit at Counsel Table (Doc. No. 1176) is DENIED for the reasons set forth above, as well as those stated on the record.
IT IS SO ORDERED.

This statement is contained in Burks' Motion to Allow Photograph of Courtroom Setup that remains under advisement. (Doc. No. 1209).