RECOMMENDED FOR FULL-TEXT PUBLICATION
 Pursuant to Sixth Circuit I.O.P. 32.1(b)
 File Name: 19a0053p.06

 UNITED STATES COURT OF APPEALS
 FOR THE SIXTH CIRCUIT

 PAUL EDWARD DANIEL, ┐
 Petitioner-Appellant, │
 │
 > No. 18-1276
 v. │
 │
 │
 DEWAYNE BURTON, Warden, │
 Respondent-Appellee. │
 ┘

 Appeal from the United States District Court
 for the Eastern District of Michigan at Detroit.
 No. 2:16-cv-12308—Nancy G. Edmunds, District Judge.

 Decided and Filed: March 27, 2019

 Before: BOGGS, GIBBONS, and BUSH, Circuit Judges.

 _________________

 COUNSEL

ON BRIEF: Phillip D. Comorski, Detroit, Michigan, for Appellant. B. Eric Restuccia, Linus
Banghart-Linn, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan,
for Respondent.
 _________________

 OPINION
 _________________

 BUSH, Circuit Judge. Paul Daniel was convicted of first-degree murder, conspiracy to
commit murder, and possessing a firearm during the course of a felony. He appeals the order of
the district court denying his petition for a writ of habeas corpus, which he sought pursuant to 28
U.S.C. § 2254. For the reasons that follow, we AFFIRM the district court’s order.
 No. 18-1276 Daniel v. Burton Page 2

 I. BACKGROUND

 This case arises from the drive-by shooting of Marcus Newsom on February 8, 2002.
That evening, Paul Daniel, along with his brother, Peter, and their companions Leonard
McGlown and Cordall Neal, traveled together in a van, pulled up alongside a car occupied by
Newsom, and shot Newsom. The quartet mistook Newsom for Jamal Bradley (the intended
target), probably because Newsom was in an automobile that belonged to Newsom’s sister, who
was Bradley’s girlfriend. Newsom died from multiple gunshot wounds.

 Based on eyewitness testimony, officers found and stopped the vehicle containing Daniel
and his companions. Upon retracing the route between the shooting and the location where
Daniel and his companions were stopped, investigators recovered various firearms and gloves
that had been discarded on the roadway. Bullets from those firearms matched the type of bullets
found in Newsom’s body and in his sister’s vehicle. Daniel and his companions were arrested
and tried for murder.

 Three of the defendants—Daniel, his brother, and McGlown (“Defendants”)—were tried
together in Michigan state court. Before trial commenced, the trial judge ordered each of the
Defendants to wear a Band-It, an electronic restraint strapped onto the lower leg and concealed
underneath clothing. An officer holds the remote-control device used to set off the Band-It,
which sends an electric shock into the prisoner’s leg and body if the prisoner needs to be
restrained. Daniel’s counsel objected, stating that the Band-It was “pretrial punishment” and
Daniel had no history of acting out in the courtroom. R. 6-11, Page ID 666. The judge overruled
the objection, finding that “[t]he threat of danger and safety and security [was] [im]minent,” the
device was not “evident or apparent to anyone,” and “[t]he electronic device . . . would not be
arbitrarily activated.” Id. at Page ID 667. Defendants wore the Band-It throughout the nineteen-
day trial, after which they were convicted of first-degree premeditated murder, conspiracy to
commit first-degree murder, and felon in possession of a firearm. The officers never activated or
threatened to activate Daniel’s Band-It.
 No. 18-1276 Daniel v. Burton Page 3

 II. PROCEDURAL HISTORY

 In 2012, Daniel appealed his conviction. The Michigan Court of Appeals granted his
motion to remand to the trial court for an evidentiary hearing on the use of the restraints at trial.
On remand, after a lengthy evidentiary hearing, the trial court found no error in its decision to
order Defendants to wear electronic restraints and declined to grant a new trial. The Michigan
Court of Appeals affirmed, People v. Daniel, No. 308329, 2014 WL 3844010 (Mich. Ct. App.
Aug. 5, 2014), and the Michigan Supreme Court denied leave to appeal. People v. Daniel, 861
N.W.2d 32 (Mich. 2015).

 Daniel then filed the instant § 2254 petition for habeas relief in the district court, alleging
that he was denied his constitutional rights to due process, a fair trial, and to counsel when he
was restrained during trial with the Band-It. Although the district court noted that the
government argued the claims were procedurally defaulted, the court decided, for the purposes of
judicial economy, to address the merits of Daniel’s claims. On February 7, 2018, the district
court denied habeas relief but granted a certificate of appealability only on the issue as to
whether the Band-It unconstitutionally interfered with Daniel’s ability to communicate with his
counsel.

 III. STANDARD OF REVIEW

 Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of
1996 (“AEDPA”). Under AEDPA, a writ of habeas corpus may not be granted unless the state
court’s adjudication of the claim:

 (1) resulted in a decision that was contrary to, or involved an unreasonable
 application of, clearly established Federal law, as determined by the Supreme
 Court of the United States; or
 (2) resulted in a decision that was based on an unreasonable determination of the
 facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

 We review a district court’s denial of a habeas petition de novo. See Cleveland v.
Bradshaw, 693 F.3d 626, 631 (6th Cir. 2012). The district court’s findings of fact are reviewed
 No. 18-1276 Daniel v. Burton Page 4

for clear error, and its legal conclusions on mixed questions of law and fact are reviewed de
novo. Gumm v. Mitchell, 775 F.3d 345, 359–60 (6th Cir. 2014). “[T]he habeas petitioner has the
burden of rebutting, by clear and convincing evidence, the presumption that the state court’s
factual findings were correct.” Henley v. Bell, 487 F.3d 379, 384 (6th Cir. 2007) (citing 28
U.S.C. § 2254(e)(1)).

 Although the government again argues that Daniel’s claim is procedurally defaulted, we
cut to the merits because Daniel’s claim fails on the merits and a procedural analysis would only
complicate the case. See Storey v. Vasbinder, 657 F.3d 372, 380 (6th Cir. 2011).

 IV. DISCUSSION

 Daniel contends that the Band-It deprived him of his ability to communicate with his
lawyer during trial because he was afraid that the device could go off and it might kill him. The
Michigan trial court rejected his claim on the merits, which Daniel argues was “an unreasonable
application of” clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). To
succeed on that argument, he must show that no “fairminded jurist[]” could have rejected his
claim that use of the Band-It violated his Sixth Amendment right to consult with counsel.
Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted); see also
White v. Woodall, 572 U.S. 415, 427 (2014) (“[R]elief is available under § 2254(d)(1)’s
unreasonable-application clause if, and only if, it is so obvious that a clearly established rule
applies to a given set of facts that there could be no ‘fairminded disagreement’ on the question.”
(citing Harrington, 562 U.S. at 103)).

 Daniel’s argument is similar to the defendant’s argument in United States v. Miller,
531 F.3d 340 (6th Cir. 2008), in which the defendant challenged the court’s order to wear a stun
belt under his clothing throughout his trial. Though involving a stun belt and not a Band-It, we
find that the analysis from Miller is applicable to the instant case. Like a stun belt, the Band-It is
worn underneath the defendant’s clothing, an officer uses a remote control to trigger either of the
devices, and the devices employ electrical shock when set off. Id. at 343–44.1 The defendant in

 1We also held in Miller that though “the bulk of federal cases discussing the use of physical restraints
during trial and sentencing, involved traditional methods of securing the accused, such as handcuffs and shackles . . .
 No. 18-1276 Daniel v. Burton Page 5

Miller argued that he was “forced to sit through his entire jury trial under the constant threat of
having” the electricity accidentally administered, and this “stifled [his] ability to communicate
with his counsel due to the threat of being electrocuted,” as Daniel also now argues. Id. at 347.

 These arguments, however, contradict statements Daniel made at the remand hearing, in
which he conceded that he was able to lean over, talk to his attorneys, and ask them questions.
He also admitted that he was able to take notes, look at documents that his attorneys provided
him, and discuss the trial with his brother. A deputy sheriff confirmed that he saw Daniel
interact with his lawyer during the trial. Thus, there is no evidence in the record that Daniel was
prevented from conferring with his lawyer. See United States v. Orris, 86 F. App’x 82, 86 (6th
Cir. 2004) (upholding the district court’s shackling order because “there is no indication
whatsoever in the record that the shackling prevented [the defendant] from consulting with his
attorney”).

 Furthermore, Lieutenant James Craig, the assistant jail administrator, testified that prior
to it going off, the Band-It issues an alert tone. For example, when Daniel’s brother attempted to
“headbutt” a detective, the alert tone went off so that everyone in the vicinity, including Daniel,
heard it. Daniel’s brother then stopped resisting, so the electric shock was not employed. Thus,
Daniel was aware that it was highly unlikely the Band-It would shock him accidentally.
Furthermore, “we cannot find any Supreme Court precedent that speaks to the psychological
impact of non-visible restraints and their interference with a defendant’s ability to present a fair
defense [or consult with counsel].” Leonard v. Warden, Ohio State Penitentiary, 846 F.3d 832,
843 (6th Cir. 2017).

 Consequently, “[Daniel] has not established an unreasonable application of clearly
established federal law.” Id. Additionally, because there is no evidence that the Band-It
hindered his communications with his attorney, “we cannot conclude that [Daniel] was
prejudiced in his ability to aid in his own defense at trial.” Miller, 531 F.3d at 347.

the ‘same fundamental issues are implicated in the decision of the district court’ to restrain a defendant through the
use of a stun belt.” 531 F.3d at 345 (citation omitted). We similarly hold here that this reasoning applies to the use
of a Band-It.
 No. 18-1276 Daniel v. Burton Page 6

 To the extent that “[Daniel] challenges the finding that security concerns justified
ordering the [Band-It], . . . he has not shown that ‘it was based on an unreasonable determination
of the facts in light of the evidence presented,’” Adams v. Bradshaw, 826 F.3d 306, 318 (6th Cir.
2016) (citing 28 U.S.C. § 2254(d)(2)), particularly considering the testimony of Lieutenant Craig
and McGlown’s attorney. Lieutenant Craig testified that co-Defendant McGlown threatened to
kill family members of a trial witness. McGlown’s attorney testified that he was concerned for
his own personal safety throughout the trial, as well as McGlown’s safety, because, among other
things, the Daniel brothers had mouthed threats to him and McGlown.

 V. CONCLUSION

 For the above-mentioned reasons, the district court’s judgment is AFFIRMED.